**UNITED STATES of America**

v.

**Max Stephen TRACESKI, Jr.**

**Crim. No. 11925.**

United States District Court
D. Connecticut.

May 2, 1967.

Jon O. Newman, U. S. Atty., David Margolis, Asst. U. S. Atty., Hartford, Conn., for the United States.

Peter J. Zaccagnino, Hartford, Conn., for defendant.

## RULING ON MOTION TO SUPPRESS THE EVIDENCE

BLUMENFELD, District Judge.

### The Facts

In mid-afternoon on March 2, 1967, John Turley, a detective of the West Hartford Police Department, while on patrol in an unmarked cruiser, received a radio request from headquarters to call in by telephone. When he complied, he was told of a telephoned complaint just received from the manager of the West Hartford Branch of the Constitution National Bank that his bank was going to be robbed. Turley, accompanied by a fellow officer, promptly drove to the bank, entered by way of the rear door and spoke to the branch manager, Joseph Surrano. This was at 3:35 p. m. Surrano told Turley that a few minutes earlier he had observed a man enter the bank and confer with Miss Yvette Gagne, a teller. When the man left the bank, Miss Gagne informed Surrano that this individual had told her that he wanted her assistance in carrying out his plan, which called for him to drive up to her drive-in window and hand her a bag and a note into which she was to place money. Surrano also indicated that Miss Gagne was hysterical as a result of the encounter; accordingly, Turley did not attempt to interview her at this time. But before the detective could even talk to Miss Gagne, Surrano interrupted his remarks to point out the defendant, who was now standing across the street from the bank, as the man who had spoken with Miss Gagne. Detective Turley observed the defendant walk back and forth on the sidewalk in front of the bank and saw him peer at the bank from behind a parked car.

Turley and his fellow officer left the bank and placed the defendant under arrest and immediately warned him of his constitutional rights. He then quickly frisked the defendant for weapons and found none. He placed the defendant in a police car in the custody of his partner and returned to the bank to speak with Miss Gagne.

At this time, Miss Gagne, informed Turley that the defendant had entered the bank at about 3:25 p. m. and informed her of his intentions to rob the bank. The defendant further told Miss Gagne that if she refused to cooperate, he would jump over the counter and take it; and that if he didn't get the money in this bank, he would rob another bank.

After this discussion with Miss Gagne, Detective Turley brought the defendant to police headquarters and booked him on a charge of breach of the peace. Before the defendant was put in a cell, he was asked to empty his pockets. When he did so, the note and the homemade cloth bag which he now seeks to suppress as illegally seized came to light. It is obvious that the note demanding money, and the bag into which it was to be put, were means by which a robbery was to be committed.

### Discussion

The admissibility of the evidence thus obtained depends of course, upon the legality of the search, and this in turn depends upon whether the arrest, made without a warrant, was legal.

On the foregoing facts, I conclude that the search which led to the discovery of the evidence sought to be suppressed was incidental to a lawful arrest.

## I.

Connecticut police officers have statutory authority to arrest a person apprehended in the act of committing a felony "on the speedy information of others * * *." Conn.Gen.Stats. § 6–49 (1966 Rev.). See Sims v. Smith, 115 Conn. 279, 161 Atl. 239 (1932); State v. Davis, 24 Conn.Supp. 22, 32, 186 A.2d 383, 390 (1962). What was said to have occurred in the bank less than an hour before might possibly constitute the state felony of attempted theft (Conn.Gen. Stats. §§ 53–56, 54–198 (1958 Rev.)) or the federal crime of entering a bank with intent to commit larceny (18 U.S.C. § 2113 (1964)) with which he is presently charged. I conclude (1) that the information was promptly received after the commission of the crime; (2) that the officer had reasonable grounds to accept it as true; and (3) that the defendant was concerned in it. See State v. Carroll, 131 Conn. 224, 38 A.2d 798 (1944). Cf. Burke v. N. Y., N. H. & H. R. R., 267 F.2d 894 (2d Cir. 1959). The information concerning the commission of those crimes came to the officer who made the arrest with sufficient speed to satisfy Connecticut's statutory requirements. See also Ker v. California, 374 U.S. 23, 34, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

## II.

Quite apart from the speed of its receipt, the information was adequate under federal standards to warrant a prudent man in believing that a crime had been committed. See Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Henry v. United United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Brinegar v. United States, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Mr. Surrano was present and in charge of the bank when the wrongful acts were committed. His statement concerned *facts,* not suspicion, and both he and his disclosed informant were reliable. See Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). It has long been settled that an arrest may be made on hearsay evidence. Jones v. United States, supra at 269, 80 S.Ct. 725; United States v. Heitner, 149 F.2d 105, 106–07 (2d Cir.), cert. denied sub nom. Cryne v. United States, 326 U.S. 727, 66 S.Ct. 33, 90 L.Ed. 432 (1945); see United States v. Miguel, 340 F.2d 812, 814 (2d Cir. 1964), cert. denied, 382 U.S. 859, 86 S.Ct. 116, 15 L.Ed.2d 97 (1965). That Miss Gagne was still emotionally affected by the defendant's unlawful conduct directed toward her added support to the reliability of Surrano's information. In the light of Surrano's disclosure, the officer's own observations of the defendant's conduct was further corroboration to a prudent man's belief that a felony had already been committed or was about to be committed by the defendant. Cf. United States v. Miguel, supra, 340 F.2d 812.

That the officers chose not to risk the defendant's escape by maintaining surveillance until Miss Gagne could be interviewed did not deny to them the benefit of her own affirmance of Mr. Surrano's report of her information. The additional corroboration of what was already sufficient probable cause from Miss Gagne of the earlier report to her employer was received by the officer shortly after he first arrested the defendant and while the defendant was still held in custody. Although it was received after the defendant had technically been arrested, it does not have to be excluded from consideration in passing upon the validity of the search which came later. Everything that occurred from the time the officers arrived at the bank until they left with their prisoner was one episode with respect to the arrest and detention of the defendant. There is no basis in technicalities or in reason to segment it into separate events. Cf. Brinegar v. United States, supra, 338 U.S. at 178–79, 69 S.Ct. 1302 (concurring opinion of Mr. Justice Burton).

## III.

 That the detective booked the defendant—or even arrested him—for the lesser offense of breach of the peace would not invalidate the search because it revealed an additional and different offense. Abel v. United States, 362 U.S. 217, 239–40, 80 S.Ct. 683, 4 L.Ed.2d 668 (1959); United States ex rel. Boucher v. Reincke, 341 F.2d 977–80, (2d Cir. 1965); see Charles v. United States, 278 F.2d 386 (9th Cir.), cert. denied, 364 U.S. 831, 81 S.Ct. 46, 5 L. Ed.2d 59 (1960). In fact, the conduct for which he was arrested fits the offense for which he is now being prosecuted. His rights are in no way adversely affected because the arresting officer did not classify it under the precise statute. Police officers are not required to be curbstone legal technicians. Cf. Brinegar v. United States, supra, 338 U.S. at 175–76, 69 S.Ct. 1302 (1948).

## IV.

 Once custody was lawfully obtained over the body of the accused, a search of his person was permissible. United States v. Jackson, 22 F.R.D. 38 (S.D.N.Y.1958). It was not necessary that the entire search be conducted on a public street. Cf. Abel v. United States, supra, 362 U.S. at 239, 80 S.Ct. 683. To be incidental to the arrest the whole search need not be instantly contemporaneous. "Why is search of the arrested person permitted? For two reasons: first, in order to protect the arresting officer and to deprive the prisoner of potential means of escape * * * and, secondly, to avoid destruction of evidence by the arrested person. * * *" United States v. Rabinowitz, 339 U.S. 56, 72, 70 S.Ct. 430, 434, 94 L.Ed. 653 (1950).[1] It was not only permissible, but appropriate, that the thorough search which careful police practice requires should be delayed until it could be made in the station house to which the defendant was promptly taken. Charles v. United States, supra, 278 F.2d at 388–

89. Cf. United States v. Caruso, 358 F.2d 184 (2d Cir.), cert. denied, 385 U.S. 862, 87 S.Ct. 116, 17 L.Ed.2d 88 (1966).

This is not a case where the evidence uncovered by the search is sought to be used to justify it. The search was incidental to a valid arrest.

The motion to suppress is denied.

---

1. From dissenting opinion of Mr. Justice Frankfurter. (The Justices were not in disagreement on this point.)