**George McCREARY, Appellant,**

v.

**Maurice SIGLER, Appellee.**

**No. 18907.**

United States Court of Appeals
Eighth Circuit.

Feb. 18, 1969.

Rehearing En Banc Denied March 7, 1969.

William G. Line, of Kerrigan, Line & Martin, Fremont, Neb., for appellant.

Bernard L. Packett, Asst. Atty. Gen. of Nebraska, Lincoln, Neb., for appellee, Clarence A. H. Meyer, Atty. Gen. of Nebraska, Lincoln, Neb., on the brief.

Before MATTHES, GIBSON and LAY, Circuit Judges.

LAY, Circuit Judge.

This case arises from a post conviction petition for a federal writ of habeas corpus challenging the validity of the conviction of a Nebraska state prisoner on grounds that the evidence used against him was obtained by an illegal search in contravention of the Fourteenth Amendment. The federal district court held an evidentiary hearing on the issues presented and denied the writ. The district court found it unnecessary to pass upon the validity of the actual search warrant issue, since it found that the search was made with the voluntary consent of the owner. Upon a motion for rehearing, we vacated our original affirmance in view of Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

A coin box was removed from a telephone in a public phone booth at a filling station in Fremont, Nebraska, on December 10, 1964. The filling station attendant reported the theft to the police and identified the petitioner and two girls who had accompanied him in and near the booth. The police immediately placed surveillance upon McCreary and the girls. One of the girls was Sharon Bradbury Stanek who lived with her father Russell Bradbury on the premises searched. It developed that the petitioner was staying in the same apartment. Shortly thereafter the deputy sheriff, D. W. Parker, obtained a search warrant from a justice of the peace and went to apartment 3 of the Claasen Apartments where Sharon was known to live. When

Parker arrived at the apartment, he advised Mr. Bradbury of the fact that the officers had a search warrant and then showed him the warrant. Bradbury first got up to get a drink and then said, "You don't need it. Go ahead and search. I pay the rent here."

The Supreme Court of Nebraska had previously affirmed the conviction of petitioner holding (1) that petitioner had no standing to object to the search since the owner of the apartment had given his consent to the search, and (2) that the search was lawful, nevertheless, since the search warrant was validly issued. State v. McCreary, 179 Neb. 589, 139 N.W.2d 362 (1966), cert. den. 384 U.S. 979, 86 S.Ct. 1877, 16 L.Ed.2d 689.

■ We cannot endorse the view of older cases that petitioner has no standing to object to the search. This view was rejected in Jones v. United States, 362 U.S. 257, 267, 80 S.Ct. 725, 734, 4 L.Ed.2d 697 (1959), where the Supreme Court said:

"No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him."

■■ Upon reconsideration of Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), decided subsequent to the district court's findings of "consent" below, we hold that any consent given by Bradbury must be viewed as "impliedly coerced." The Supreme Court has expressly held that " 'consent' * * * given only after the official conducting the search has asserted he possesses a warrant" is not a valid consent when the only showing is "no more than acquiescence to a claim of lawful authority." Id. at 548–549, 88 S.Ct. at 1792.

The facts supporting "voluntary consent" are much stronger in *Bumper* than here. See 391 U.S. at 547 n. 8, 88 S.Ct. 1788 n. 8. The Supreme Court, however, has made clear:

"When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent." Id. at 550, 88 S.Ct. at 1792.

See also Overton v. New York, 393 U.S. 85, 89 S.Ct. 252, 21 L.Ed.2d 218 (1968) (per curiam).

■ An officer must have a legal basis for obtaining access to private living quarters under the badge of his office and the authority of the law. The clear logic of this rule is that a search conducted by reason of consent given upon representation of a warrant validly issued will not be lawful unless the warrant itself was validly issued.[1]

■ The legal sufficiency of the affidavit for the search warrant, although not passed upon by the district court is a question of law and merits our review without remand.

The affidavit of the deputy sheriff reads as follows:

" * * * That he (Parker) has just and reasonable grounds to believe, and does believe, upon information, that there is concealed or kept as hereinafter described, the following property, to-wit: Tools and picks and equipment for burglarizing telephone booths and a coin receptacle from the telephone booth in the Mark Schmidt Frontier Filling Station, 317 West 23rd, Fremont, Nebraska, that said property is concealed or kept in, on, or about the following described place or person, to-wit: Apartment 3 of the Claasen Apartments and all other

---

1. The state's reliance upon Maxwell v. Stephens, 348 F.2d 325 (8 Cir. 1965), is misplaced. There was no representation as to the issuance of any search warrant in the *Maxwell* case.

areas of the apartment building to which Sharon Bradbury Stanek may have access; that said property is under the control or custody of Sharon Bradbury Stanek; that the following are the grounds for issuance of a search warrant for said property and the reasons for his belief, to-wit: George McCreary, Sharon Bradbury Stanek and Georgia Jones were in the filling station at about the time the money was taken and a reliable informant has informed me that he heard money making noise in a box while McCreary and Stanek were in the phone booth and Jones was talking to him. After the break-in the subjects were seen leaving the above apartment building by a Fremont Police Officer, Fred Whitt. The break-in occurred about 9:15 P.M. December 10, 1964. The warrant should be issued for an immediate search in the night time because to wait until day time will increase the possibility of the items being moved, and the public good required that the warrant be issued for night time search. * * * "

■ Before issuing a search warrant, a magistrate must satisfy himself that the affidavit meets the test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). This test has two aspects: (1) whether the informant is in fact reliable, and (2) whether the "underlying circumstances" as to how the informant came by his information demonstrate sufficient probability of credibility to allow the search of the premises in question.

■■ This two-pronged test must be weighed with the added analysis of Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). When the affidavit is based upon the hearsay of an informant, the statement as to reliability of the informant must include as well the affiant's "reason in support of this conclusion." The additional significance we glean from Spinelli is that the magistrate must assure himself that the

affidavit is not merely based upon "casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." 89 S.Ct. at 589. However, older principles repeated in Spinelli are worthy of abbreviation here. In dealing with the sufficiency of affidavits (1) only a probability of criminal conduct need be shown, (2) standards less rigorous than rules of evidence determine sufficiency, (3) common sense controls and (4) "great deference" should be shown by the courts to a magistrate's determination of probable cause.

We have carefully reviewed the affidavit here and find there exists no "diluting of important safeguards" in showing deference to the magistrate's determination of probable cause. However, in finding probable cause we are compelled to do so upon different reasons than those expressed by the state court.

■ The Nebraska Supreme Court held that since the informant had been identified as the filling station attendant at the time of trial, sufficient reliability had been established. A federal court cannot be bound by a state's misconstruction of a federal constitutional principle. It is clear that only disclosures to the magistrate at the time of an issuance of the search warrant can be the guiding determination. "It is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention." Aguilar v. Texas, 378 U.S. at 109 n. 1, 84 S.Ct. at 1511 n. 1 (1964).

■ However, reliability of an informant may be demonstrated to the magistrate in many collateral ways. Cf. United States v. Bozza, 365 F.2d 206, 225 (2 Cir. 1966). Petitioner urges error because the informant was not identified in any way. Yet mere identification by name does not establish reliability of the person. Even if the informant's occupation were given, this would not by

itself lend "credibility" to what he says. In some instances where it is alleged that the informant was known to the affiant or had passed on previous information, this has been held to be a sufficient test of the reliability of the informant.[2] Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). However, where the affiant officer does not know the informant it would be impossible for the affiant to vouch as to the informer's reliability.

▮▮▮▮▮ Under such circumstances reliability of an informant may best be established by the affiant relating some corroboration of the story which the informant tells. Furthermore, the underlying circumstance even without corroboration may have built-in credibility guides to the informant's reliability. The essence of reliability may be found in an informant's statement of facts rather than an allegation of mere conclusory suspicion. An informant who alleges he is an "eyewitness" to an actual crime perpetrated demonstrates sufficient "reliability" of the person. In direct accord, see e. g., Coyne v. Watson, 282 F. Supp. 235 (S.D.Ohio 1967), aff'd 392 F. 2d 585 (6 Cir. 1968). These facts provide a similar standard in determining probable cause for arrest without a warrant. Probable cause for an arrest may exist where an unknown citizen makes complaints, as a victim or eyewitness to a crime, where the underlying circumstances demonstrate his first-hand personal knowledge.[3] Cf. Trimble v. United States, 125 U.S.App.D.C. 173, 369 F.2d

950 (1966); United States v. Traceski, 271 F.Supp. 883 (D.Conn.1967).

▮▮▮ In the instant case the informant was an eyewitness to the crime. According to the affidavit, (1) he identified two women and a man by name, (2) one of them *talked* to him and (3) he saw McCreary and the other girl in the phone booth and *heard* coins rattling in the box.

▮▮▮ The "break-in" occurred at the filling station phone coin box. All of this was alleged to be at 9:15 p. m. on December 10, 1964. In the early morning hours of December 11 the search warrant was obtained from the magistrate. Prior to this time, according to the testimony at trial, relying upon the informant's identification of McCreary, another police officer "tailed" McCreary and the two girls. Between the 9:15 p. m. break-in and the time when the warrant was obtained, a police officer observed the three of them together entering and leaving the apartment building where Sharon Bradbury Stanek lived. This fact is set forth in the affidavit. The realibility of a fellow police officer speaks for itself. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L. Ed.2d 684 (1965). This corroborates the identification of the three together as stated by the informant. The relative timing of this observation by the police and the time of the "break-in" is a significant factor relating to "probable cause" of the search of the specific premises involved. This total information provides a sufficient nexus and speaks of probable cause "now." Cf. Rosencranz

---

**2.** And of course reliability of the informant is not by itself sufficient to establish probable cause to search without further underlying circumstances being shown as to how the informant came by his information. See United States v. Roth, 391 F.2d 507 (7 Cir. 1967); Spinelli v. United States, supra.

**3.** Justice Harlan stated in United States v. Spinelli, 393 U.S. at 417 n. 5, 89 S.Ct. at 589 n. 5:

"While *Draper* involved the question whether the police had probable cause for an arrest without a warrant, the analysis required for an answer to this question is basically similar to that demanded of a magistrate when he considers whether a search warrant should issue."

v. United States, 356 F.2d 310 (1 Cir. 1966).

The informant's story, weighed with the relative *immediate* observation of the same three persons, McCreary and the two girls, entering and leaving the apartment building, by another officer of the law was sufficient to lend probability that the fruits of the crime may reasonably be in the specific apartment where one of the girls lived. Cf. Clemas v. United States, 382 F.2d 403 (8 Cir. 1967).

Judgment affirmed.