**UNITED STATES of America, Appellee,**

v.

**Joseph Ward EASTER, Appellant.**

**No. 76–1854.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1977.

Decided March 25, 1977.

Rehearing and Rehearing En Banc Denied April 26, 1977.

---

**231**

STEPHENSON, Circuit Judge.

Defendant appeals from a jury conviction on a two-count indictment charging him with illegal possession of a sawed-off shotgun in violation of 26 U.S.C. §§ 5861(d) and 5871.[1] The principal issues on this appeal are whether the trial court committed reversible error in denying defendant's (1) motion to suppress evidence allegedly obtained as a result of an illegal search and seizure, and (2) motion for a new trial because of evidence allegedly suppressed by the prosecution. We affirm.

This is defendant's second conviction on the instant charge. This court reversed the first conviction on the ground that defendant was deprived of a fair trial because counsel's failure "to question the search and to object to the evidence was so derelict that the claim of ineffective assistance of counsel must be sustained." *United States v. Easter*, 539 F.2d 663, 665 (8th Cir. 1976).

In the present case defendant's counsel promptly moved to suppress the sawed-off shotgun obtained from his home without an arrest warrant or a search warrant on the ground it constituted an illegal search and seizure in violation of the Fourth Amendment. After conducting an evidentiary hearing the trial court denied the motion to suppress. During the course of the trial defendant renewed his objection to the introduction of the shotgun into evidence, which was again denied.

The record of the pretrial suppression hearing discloses that at approximately 4:30 p. m. on June 16, 1975, the St. Louis Police Department received a telephone call reporting an armed robbery. A couple minutes later officers Sloan and Lineback received a call "for a holdup at Shreve and Lee." They proceeded in their patrol car to that address, where they met a person standing by a telephone at a service station who identified himself as Victor and report-

Thomas P. Roberts, Clayton, Mo., for appellant.

Frank A. Bussmann, Asst. U. S. Atty., St. Louis, Mo., for appellee; Barry A. Short, U. S. Atty., St. Louis, Mo., on brief.

Before HEANEY and STEPHENSON, Circuit Judges, and STUART,* District Judge.

* The Honorable William C. Stuart, United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri, imposed a sentence of five years to run concurrently on the two counts.

ed that he had just been robbed at New-stead and Lee (approximately three blocks from there) by two subjects, one armed with a sawed-off shotgun, and the other with a revolver. He had followed the sub-jects, who left in a yellow Volkswagen, to where they parked in front of a residence on Lee, which they entered carrying the described weapons.

The police officers immediately drove about three blocks to the residence describ-ed by Victor. He was placed in the back seat of the patrol car where he was directed to remain for his own safety. The officers radioed their dispatcher for assistance and indicated the robbery subjects were inside the house at 4706 Lee Avenue. Several officers responded to the call. Officer Lineback testified that seven or eight offi-cers had arrived at the scene prior to entry into the house.[2] Sergeant Blackman and Detective Brogan knocked on the door, an-nounced their presence, identified them-selves and their purpose. They were told to wait a minute, that someone had to get a key. The knocking was repeated but with no results. After four to five minutes, at the direction of Sergeant Blackman, Detec-tive Brogan forced the door.

Upon entry, Frederick Easter, defend-ant's brother, was observed dressed in a bathrobe standing in the rear of the middle of the room directly opposite the entrance. The officers heard a noise in a room off to the side. The door was opened and defend-ant was observed holding a sawed-off shot-gun. He was placed under arrest and the weapon seized. When Officers Sloan and Lineback returned to their patrol car the alleged robbery victim, Victor, was gone. He did not testify at either the suppression hearing or the subsequent trials.

2. Officer Sloan indicated approximately 20 offi-cers eventually came to the scene.

3. Defendant did not testify during his trial. He offered the testimony of his father and mother and a neighbor lady. Defendant's father and mother described conditions in the home when they arrived after defendant's arrest. They de-scribed conditions indicating the entire house had been thoroughly searched. The father tes-tified that one of the officers (by description,

Defendant Joseph Easter testified at the suppression hearing substantially as fol-lows: he had met a man named Victor who conformed to the general description given by the police officers; prior to the incident in question he had had a disagreement with Victor; on June 16th he had an argument with Victor over money—defendant did not like the drugs sold to him by Victor—and refused to pay Victor money he claimed was due; when defendant left after the dispute he saw Victor at the service station while defendant was purchasing cigarettes; defendant casually walked home; he denied robbing Victor.[3]

*The Search and Seizure of the Shotgun*

■ In assessing the legality of the search we start with the well established proposition "that searches conducted out-side the judicial process, without prior ap-proval by judge or magistrate are *per se* unreasonable under the Fourth Amend-ment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (foot-notes omitted); *United States v. Kelly*, 529 F.2d 1365, 1371 (8th Cir. 1976). The "plain view" doctrine is one of these exceptions, but it comes into operation only if the offi-cers have a right to be in the position where they obtain the view of the object seized. *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1967). The shotgun, of course, was not in the plain view of the officers outside the house. Thus, the crucial issue in this case is wheth-er the officers legally entered the Easter home. *United States v. Blake*, 484 F.2d 50, 54–57 (8th Cir. 1973), *cert. denied*, 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974);

Detective Brogan) told him he found the shot-gun under a cushion on the couch. The neigh-bor, Mrs. Bland, testified that she watched the police break in the front door and from her position in the street she saw defendant stand-ing inside the house with nothing on but his pants; no shirt or shoes. The police brought defendant out handcuffed. The principal de-fense before the jury was that defendant was not in possession of the shotgun.

*Root v. Gauper*, 438 F.2d 361, 364–65 (8th Cir. 1971). This in turn is dependent on whether the officers had sufficient probable cause to make a warrantless arrest of the robbery suspects alleged to be inside the house. The burden was on the government to establish that the warrantless entry was justified under the emergency or exigency doctrine. *Root v. Gauper, supra*, 438 F.2d at 365.

Appellant argues that the evidence adduced during the hearing on his motion to suppress and during his trial shows that the police lacked probable cause for their warrantless search of his home. Appellant points out that: the officers spoke with "Victor" less than a minute; they never asked him for his last name or address; they had no prior knowledge indicating reliability; Victor's story was not reasonably credible—he claimed he was held up in broad daylight at a busy intersection and that he was able to observe the robbers travel in a yellow automobile for approximately a half-mile, although he apparently was on foot; and no questions were asked by the police concerning what was obtained from him during the robbery. In summary appellant urges that the officers had no reasonable grounds for believing Victor was telling the truth.

The government contends to the contrary that the record demonstrates the police had sufficient probable cause to make the warrantless arrest and subsequent seizure. The initial call was received at the Police Department. Two officers nearby in a patrol car spoke to Victor at the place he was supposed to meet them. He indicated that the robbery took place about three blocks away. Officer Sloan observed: "He was excited"—Officer Lineback: "He appeared somewhat scared." He stated that he followed subjects in a yellow Volkswagen which they parked in front of 4706 Lee (approximately six blocks from the alleged robbery). He saw subjects enter the resi-

dence—one carrying a sawed-off shotgun and the other a revolver. He was placed in the back seat of the patrol car and they proceeded to 4706 Lee where the yellow Volkswagen was parked. The officers knocked on the door, announced who they were and what they wanted—they were told to wait a minute, that someone had to get a key. This was repeated. After four to five minutes the officers forced the door which is permitted by Missouri law.[4] Once inside they promptly arrested Frederick Easter, one of the suspects. Noise in the adjoining bedroom prompted entry by the officers and the arrest of appellant, who was holding the sawed-off shotgun. The shotgun was properly seized and thereafter admitted into evidence. In summary, the government contends that the officers had reasonable grounds for believing the robbery complaint by the victim, and were justified in acting on it immediately. We agree.

Where the informant is the victim of armed robbery, more often than not his reliability will be unknown. Where, as here, the suspects are armed and alleged to be nearby, the police officers must make a judgment and act with dispatch. In *McCreary v. Sigler*, 406 F.2d 1264 (8th Cir.), *cert. denied*, 395 U.S. 984, 89 S.Ct. 2149, 23 .L.Ed.2d 773 (1969), this court recognized that where the informant is an "eyewitness" to a crime (or victim) the essence of reliability may be found in his statement of facts.

Furthermore, the underlying circumstance even without corroboration may have built-in credibility guides to the informant's reliability. The essence of reliability may be found in an informant's statement of facts rather than an allegation of mere conclusory suspicion. An informant who alleges he is an "eyewitness" to an actual crime perpetrated demonstrates sufficient "reliability" of the person. In direct accord, see e. g., *Coyne v. Watson*, 282 F.Supp. 235 (S.D.Ohio

---

4. 38 V.A.M.S. § 544.200, which provides in part:

 To make an arrest in criminal actions, the officer may break open any outer or inner door * * * of a dwelling house * * * if, after notice of his office and purpose, he be refused admittance.

1967), aff'd 392 F.2d 585 (6 Cir. 1968). These facts provide a similar standard in determining probable cause for arrest without a warrant. Probable cause for an arrest may exist where an unknown citizen makes complaints, as a victim or eyewitness to a crime, where the underlying circumstances demonstrate his first-hand personal knowledge. Cf. *Trimble v. United States*, 125 U.S.App.D.C. 173, 369 F.2d 950 (1966); *United States v. Traceski*, 271 F.Supp. 883 (D.Conn.1967).

*McCreary v. Sigler, supra*, 406 F.2d at 1269 (footnote omitted).

Although we agree with appellant that a more searching inquiry of the victim by the police concerning himself and details of the armed robbery would be in keeping with effective police work, we are not prepared to say that the police acted without probable cause. Exigent circumstances existed. The victim reported minimal but essential details of the armed robbery and the whereabouts of the perpetrators, whom he observed entering 4706 Lee Avenue carrying the weapons used. He repeated this information to Sergeant Blackman of the St. Louis police force when he arrived on the scene and before entry was made into the residence at the Sergeant's direction. From the police standpoint a crime of violence had occurred within the half-hour, the armed suspects were observed to have entered the residence and no one had been seen departing therefrom, and they were not admitted into the residence with reasonable dispatch after announcing their presence and purpose. The fact that the victim, Victor, disappeared from the scene while the arrests and seizure were made casts a cloud on the veracity of his statements, and highlights the importance of more effective police inquiry, but it does not alter the existence of probable cause for the prompt actions taken by the police. Under the circumstances we hold that the warrantless arrest, the seizure of the shotgun and its subsequent admission into evidence were not improper under the Fourth Amendment. The trial court did not err in denying the motion to suppress.

## Motion for New Trial

■ Appellant further contends that the trial court committed reversible error in denying his motion for new trial based on suppression of evidence by the prosecution. Prior to trial defendant filed the usual discovery motions including a request for the informant's name and address. The government responded that Victor could not be located and his last name was unascertainable. The government did not produce Victor at the suppression hearing or the trial.

On the day after completion of the instant trial, the prosecuting attorney received a call from the probation officer who was preparing the presentence investigation report. He informed the prosecutor of an interview with defendant's wife on February 20, 1976, during the presentence investigation following the first trial. In the interview the wife had stated to the probation officer that the Victor in question may have been Victor Brinkley, 4520 Adelaide Avenue, St. Louis, Missouri. At that time the probation officer informed an agent of the Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms, who was not the agent assigned to this case. The latter never received the information. The prosecuting attorney promptly informed appellant's counsel and indicated the matter was being investigated further. A few days later on September 20, 1976, the prosecutor furnished appellant's counsel with a report of an interview with Victor (the victim) on September 16, 1976, which indicated that if called to testify Victor would say that appellant did rob him of $25 or $26 on the date in question and that he called the police "because he was mad and wanted to show Easter that he would not stand still for being robbed." Appellant promptly moved for new trial because this evidence was not disclosed to the defendant notwithstanding his request for the same prior to trial. The trial court denied the motion.

Appellant now urges that there was newly discovered evidence suppressed by the prosecution; that whether suppressed in-

tentionally or negligently the evidence may have made the difference between an acquittal and a guilty verdict. Initially we observe that the record indicates that the information about Victor's true identity was not newly discovered from appellant's standpoint. As early as February 20, 1976, long before the instant trial, appellant's wife suggested Victor's full name and address to the probation officer; appellant himself during the course of the hearing on the motion to suppress prior to trial testified he knew Victor well enough to speak to him and that prior to the alleged armed robbery they had a dispute over money; appellant's mother testified during the trial she knew a young man by the name of Victor, described him, and said he had visited their home "quite often."

Among the requisites which ordinarily must be met to justify the granting of a new trial on the ground of newly discovered evidence are: "(1) the evidence must be in fact newly discovered, that is, discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant." *United States v. McColgin*, 535 F.2d 471, 476 (8th Cir. 1976), *quoting from United States v. Pope*, 415 F.2d 685, 691 (8th Cir.), *cert. denied*, 397 U.S. 950, 90 S.Ct. 973, 25 L.Ed.2d 132 (1969). Appellant's motion below made no assertion that this information was not available to him prior to trial. In fact the record indicates to the contrary. The granting or denial of a motion for new trial is a matter within the broad discretion of the trial judge, particularly where it rests on factual and credibility determinations. *United States v. Bohn*, 508 F.2d 1145, 1150 (8th Cir.), *cert. denied*, 421 U.S. 947, 95 S.Ct. 1676, 44 L.Ed.2d 100 (1975). On this record we are satisfied the trial court did not abuse its discretion in summarily denying the motion for new trial.

Affirmed.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. In my judgment, the police did not have probable cause to break into the Easter home and arrest Joseph Easter without a warrant.

The Supreme Court has not yet decided "whether and under what circumstances an officer may enter a suspect's home to make a warrantless arrest." *United States v. Watson*, 423 U.S. 411, 418 n.6, 96 S.Ct. 820, 825 n.6, 46 L.Ed.2d 598 (1976). For the purpose of this dissent only, I assume that such a right exists under exigent circumstances. The question then is whether such circumstances were present here. Judge Harold Leventhal, in an exhaustive and scholarly opinion, *Dorman v. United States*, 140 U.S.App.D.C. 313, 435 F.2d 385 (1970), set forth the following factors which he considered relevant to that determination: (1) whether the offense involved violence; (2) whether the suspect was reasonably believed to be armed; (3) whether a clear, rather than a minimal, showing of probable cause to believe that the suspect committed the offense was made; (4) whether there was strong reason to believe that the suspect was in the premises being entered; (5) whether there was a likelihood that the suspect would escape if not swiftly apprehended; (6) whether the entry was peaceful rather than forcible; and (7) whether delay would be involved in seeking a warrant.

The most critical factor here is whether there was a clear showing of probable cause. In my judgment, probable cause was not shown unless we are prepared to ascribe reliability to everyone who claims to be a victim. This we cannot do unless we are to totally disregard the standard of reasonableness which has been the standard for determining if the Fourth Amendment has been violated.

The best discussion of the problem of the reliability of victims' reports to the police is that set forth in *Pendergrast v. United States*, 135 U.S.App.D.C. 20, 416 F.2d 776, 785, *cert. denied*, 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969). The Court there rejected an approach calling for the automatic acceptance of a victim's complaint in favor of an approach which requires that the victim afford an officer credible

grounds for believing that the offense was committed, and that there be an absence of circumstances materially impeaching the victim's report. Here, the alleged victim, Victor, not only failed to reveal his full name and address to the police but also failed to disclose the circumstances of the alleged robbery. He even failed to state what had been taken from him. Nothing about his appearance or demeanor tended to support his accusation.[1]

Moreover, Victor's report that the holdup took place in the middle of the day on a busy street corner and that the robbers drove directly to their home in a yellow Volkswagen and parked in front of their home is inherently unbelievable. Additionally, as this Court pointed out in *United States v. Easter*, 539 F.2d 663 (8th Cir. 1976), the record strongly suggests that Victor may have harbored animosity towards the defendant. These facts ought to have put the police on notice to not only question Victor more extensively but also to have questioned neighbors, who were out on their porches, before breaking into the Easter home.

Additionally, there is reason to doubt whether the police believed Victor or whether they took action for other reasons. They descended on the Easter house with several armed police officers and a helicopter gun ship. Upon entering the home, they first arrested Joseph Easter's brother on a drug charge even though not a word about drugs had been spoken by Victor. Next, they thoroughly ransacked the bedroom in which Joseph Easter was found, an act which was unnecessary if their purpose was to arrest an armed robber.

Finally, there is no showing in this record that there was any reason why a warrant should not have been obtained. The police had the home surrounded, there was no danger of escape and the record does not indicate that contraband from the robbery was involved. Moreover, the record is devoid of evidence indicating a warrant could not have been promptly obtained.

In light of this record, no possible circumstances existed which justified the forcible entry into the Easter home and the defense motion to suppress should have been granted.

---

1. In *Pendergrast v. United States*, 135 U.S.App.D.C. 20, 416 F.2d 776, *cert. denied*, 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969), the victim's bruised and bloody appearance corroborated his report of a beating and a robbery. In *Trimble v. United States*, 125 U.S.App.D.C. 173, 369 F.2d 950 (1966), the victim was seen pursuing two fleeing men and shouting for police assistance. In *Nelson v. Moore*, 470 F.2d 1192 (1st Cir. 1972), the rape victim's story was corroborated by her physical appearance. In *United States v. Anderson*, 533 F.2d 1210 (D.C. Cir.1976), the victim of an assault provided the officers with the full details of the circumstanc-es surrounding the assault. In *United States v. Traceski*, 271 F.Supp. 883 (D.Conn.1967), the incident was reported by the President of the bank in which an unlawful act had been committed because another bank employee was in shock from the incident. *McCreary v. Sigler*, 406 F.2d 1264 (8th Cir.), *cert. denied*, 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969), and *Coyne v. Watson*, 282 F.Supp. 235 (S.D.Ohio 1967), *aff'd*, 392 F.2d 585 (6th Cir. 1968), cited by the majority, are cases in which the question of whether an affidavit in support of a search warrant was sufficient. Neither involved the victim of a crime.