Elizabeth DICKESON, Appellant
(Defendant),

v.

STATE of Wyoming, Appellee (Plaintiff).

No. 91–105.

Supreme Court of Wyoming.

Dec. 11, 1992.

Wyoming Public Defender Program, Leonard D. Munker, State Public Defender, David Gosar, Appellate Counsel, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., and Michael K. Kelly, Asst. Atty. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT[*] and GOLDEN, JJ.

THOMAS, Justice.

The dispositive issue in this case is whether Elizabeth Dickeson (Dickeson) was denied the effective assistance of counsel at her trial. This issue was not raised in the trial court and, of course, there is no ruling by the trial court on this claim. Other issues are identified and argued relating to the suppression of statements made by Dickeson following the seizure of her diary; the sufficiency of the evidence to sustain a conviction; and the deprivation of a fair trial because of a plethora of evidentiary errors. We conclude that the record in this case demonstrates that Dickeson did not receive effective assistance from her attorney in the trial court as required by both the Wyoming and federal constitutions. We reverse her conviction and remand the case for a new trial. Because of the premise for our decision, we do not consider the other claims of error presented, assuming they will not recur in the trial court.

In her Brief of the Appellant, Dickeson states the issues to be:

I. Should the statements made by the appellant following the illegal seizure of her diary have been suppressed?

II. Is the verdict supported by sufficient evidence?

III. Was the appellant deprived of a fair trial because of the many evidentiary errors that occurred during the trial?

IV. Was the appellant denied the effective assistance of counsel?

The State of Wyoming restates those issues, in the Brief of Appellee, as follows:

I. Can appellant now object to the seizure of her diary when no motion to suppress the seizure was made prior to trial and no objection was made at trial?

II. Did sufficient evidentiary errors occur such that the cumulative effect can be said to have denied appellant her right to a fair trial?

III. Whether trial counsel's representation of appellant was deficient?

IV. Was there sufficient evidence to support the verdict?

Dickeson was found guilty by a jury of a charge of arson in the first degree in violation of Wyo.Stat. § 6–3–101 (1988).[1] Dickeson then was sentenced to a term of not less than four, nor more than six, years to be served in the Wyoming Women's Center. The sentence was made to run consecutively to sentences for two counts of credit card fraud imposed in another case. Dickeson appeals from that portion of the judgment and sentence relating to the conviction for arson in the first degree.

The arson charge alleged setting a fire discovered in the storeroom of Noland Feed, Inc. in Casper, Wyoming on August 9, 1989. Kathy Flowers (Flowers), a store employee and the daughter of the owners, reported she arrived at work at 7:30 A.M. with her three children, ages one, three,

---

[*] Chief Justice at time of oral argument.

1. Wyo.Stat. § 6–3–101 (1988) provides:
 (a) A person is guilty of first-degree arson if he maliciously starts a fire or causes an explosion with intent to destroy or damage an occupied structure.
 (b) First-degree arson is a felony punishable by:

 (i) Imprisonment for not more than twenty (20) years;
 (ii) A fine of not more than the greater of twenty thousand dollars ($20,000.00) or two (2) times the face amount of the insurance if the fire was started to cause collection of insurance for the loss; or
 (iii) Both fine and imprisonment.

and five, and began to work on the firm's books. She testified there were three other employees at the store that morning, two of whom were working in the warehouse, and one who was working at the front counter. The Flowers children went into the storeroom about 8:30 A.M. to get some popsicles and, from that time on, the children were either with Flowers or with her brother, one of the other employees, for the rest of the morning.

Flowers observed only two customers, a male and a female, who entered the store that morning prior to the fire. She did not know either of those customers, but the male customer reported the fire, and the female customer later was identified by Flowers as Dickeson. Dickeson entered the store between 9:30 and 9:45 A.M., and Flowers looked at her for approximately twenty to thirty seconds. Flowers was unable to tell where the person she identified as Dickeson was going in the store. After finishing a deposit she had been working on, Flowers attempted to find the female customer to determine if she needed any assistance. She was unable to find her, and she then gathered up her children and returned to the store area so her son could try on some boots. As they were engaged in trying the boots on the son, the male customer ran in and said they had a fire. Flowers ran to the warehouse to alert her brother, called the fire department, and took her children outside. Two of the employees successfully extinguished the fire before the arrival of the fire department personnel.

After a photographic identification of Dickeson by Flowers, an officer and a detective approached Dickeson at her place of employment, the El Diablo Supper Club in Glenrock, on February 8, 1990. The officer testified Dickeson agreed to accompany the investigators to the Casper police department building for questioning. When Dickeson attempted to leave her purse behind, locked in her car, the officer advised her to bring her purse, and then insisted that she do so.

Upon arrival at the Casper police department building, Dickeson was read her *Miranda* rights, and she then was questioned for approximately three hours concerning the arson charge and an unrelated offense she also was suspected of committing. Dickeson first denied being in Casper on August 9, 1989 but, after she was confronted with an entry from the diary she carried in her purse, she changed her story. It is important to note that, during the course of the interview, the investigating officer took her diary, and it was at his suggestion that she refreshed her recollection from the diary. Upon refreshing her memory, Dickeson admitted that at 9:30 A.M., on August 9, 1989, she had an interview at the Casper Job Service. The statement based upon the entry in the diary was the only evidence, other than Flowers' identification, placing Dickeson in Casper on the day of the fire. When Dickeson testified at trial, she denied going to the Noland Feed store August 9, 1989, and she also denied setting the fire. The inconsistency in her stories was used for impeachment purposes at trial.

At the conclusion of the three-hour interview, Dickeson was arrested on the charge of first-degree arson. A criminal complaint was filed along with an affidavit from the arresting officer, and a criminal arrest warrant was obtained for Dickeson. On February 14, 1990, an assistant public defender was appointed as counsel for Dickeson, but that attorney withdrew on April 18, 1990, and a privately employed attorney entered his appearance as counsel. Dickeson's trial began on December 3, 1990 and, after two days, the jury returned the verdict of guilty of the charge of arson in the first degree.

With respect to the primary and dispositive issue, the denial of the effective assistance of counsel, Dickeson argues she did not receive effective assistance prior to and during her trial and, therefore, her conviction was not constitutionally obtained. The right of a criminal defendant to the assistance of counsel is guaranteed by the Sixth Amendment of the Constitution of the Unit-

ed States,[2] made applicable to the states through the Fourteenth Amendment, and by Wyo. Const. art. 1, § 10.[3]

The concept of "effective" counsel was articulated by the Supreme Court of the United States in *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). In that case, the court held the mere assignment of counsel does not meet the constitutional mandate, but the counsel must provide effective assistance in the preparation of the case for trial. The standard with respect to effective assistance of counsel requires the criminal defense to satisfy two criteria:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984).

We adopted this standard in *Frias v. State*, 722 P.2d 135 (Wyo.1986). *See also, Barron v. State*, 819 P.2d 412 (Wyo.1991); *Engberg v. Meyer*, 820 P.2d 70 (Wyo.1991); *Gist v. State*, 737 P.2d 336 (Wyo.1987), *appeal after remand*, 766 P.2d 1149 (Wyo. 1988).

▮▮ We examine the conduct of defense counsel in light of all the circumstances in determining whether the identified acts or omissions fall outside the ambit of professionally competent assistance,

bearing in mind the function of counsel is to make the adversarial testing process work in every case. *Strickland; Gist.* We do not evaluate the efforts of counsel from a perspective of hindsight but, rather, we endeavor to reconstruct the circumstances surrounding counsel's challenged conduct and evaluate the professional efforts from the perspective of counsel at the time. *Strickland.* "We invoke a strong presumption that counsel rendered adequate and reasonable assistance making all decisions within the bounds of reasonable professional judgment." *Gist*, 737 P.2d at 342 (citations omitted). The burden is upon the defendant to overcome this presumption that, in light of the circumstances, the challenged action or failure of the attorney might be considered sound trial strategy. *Strickland.*

We heretofore have reversed convictions in four criminal cases because of the ineffective assistance of counsel. In *King v. State*, 810 P.2d 119 (Wyo.1991), *Gist*, and *Frias*, we concluded that defense attorneys had failed to interview prospective eye witnesses, and no justification could be found in the record to explain why no interview was pursued. We held that, once the deficiency is demonstrated in that situation, the resulting prejudice will be presumed. *King.* In *Shongutsie v. State*, 827 P.2d 361 (Wyo.1992), we held that, when multiple criminal defendants are represented by the same attorney, such dual representation constitutes ineffective assistance of counsel, and prejudice will be presumed in such an instance, in the absence of an appropriate waiver made in a prescribed manner.

In this case, our quest for resolution must begin with the first prong of the *Strickland* test. Dickeson's burden is to demonstrate her attorney's performance was deficient. Her claim rests primarily upon the failure of trial counsel to file a suppression motion to exclude those statements made by Dickeson after the seizure

---

2. U.S. Const. amend. VI provides as follows:
   In all criminal prosecutions, the accused shall enjoy the right to * * * have the Assistance of Counsel for his defence.

3. Wyo. Const. art. 1, § 10 provides as follows:
   In all criminal prosecutions the accused shall have the right to defend in person and by counsel, * * *.

of her diary; the failure to object to the admission of evidence that arguably was excludable; and the failure to advance an opening statement. We address these contentions separately.

■ First, with respect to the failure to file a suppression motion to exclude those statements made after the seizure of Dickeson's diary, we are in accord with the conclusion of the Supreme Court of the United States that the failure to file a suppression motion does not constitute ineffective assistance of counsel *per se.* *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Instead, the reasonableness of counsel's failure must be evaluated from the perspective of counsel at the time of the alleged error and in light of all the circumstances. *Kimmelman.* In this case, it is clear from the record no motion to suppress was filed before trial, and no objection was made at trial to the pre-arrest, warrantless search of Dickeson's purse, the seizure of her diary, or the statements she made after the search and seizure. The record offers minimal guidance as to any reason supporting the decision by counsel to not move to suppress this evidence or to not object to it at trial.

■ The State concedes that, if a proper objection had been made attacking the search of Dickeson's purse and the seizure of its contents together with the subsequent incriminating statements, the burden of proof would have fallen to the State to show the search and seizure were valid, or one of the exceptions to the rule foreclosing warrantless searches and seizures is applicable. We have held in many instances the burden is on the State to justify a warrantless search and seizure as reasonable. *Ortega v. State,* 669 P.2d 935 (Wyo. 1983); *Stamper v. State,* 662 P.2d 82 (Wyo. 1983); *Jessee v. State,* 640 P.2d 56, *reh'g denied,* 643 P.2d 681 (Wyo.1982). The recognized exceptions that may be invoked include:

1) search of an arrested suspect and the area within his control; 2) a search conducted while in hot pursuit of a fleeing suspect; 3) a search and/or seizure to prevent the imminent destruction of evidence; 4) a search and/or seizure of an automobile upon probable cause; 5) a search which results when an object is inadvertently in the plain view of police officers while they are where they have a right to be; 6) a search and/or seizure conducted pursuant to consent; and 7) a search which results from an entry into a dwelling in order to prevent loss of life or property.

*Ortega,* 669 P.2d at 940–41 (citations omitted).

On the basis of the evidence presented in this case, the question as to whether a legal search and seizure was conducted and accomplished is significant. The State contends it is not necessary to determine whether or not the search of Dickeson's purse was valid or whether it fits within one of the exceptions to the warrant requirement. This argument hinges upon the provisions of Wyo.R.Crim.P. 40(e):[4]

A person aggrieved by an unlawful search and seizure may move the district court for the county in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, or * * *. The motion to suppress evidence may also be made in the county where the trial is to be had. The motion shall be made before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial. (Emphasis added.)

The argument of the State is that this rule mandates compliance with its terms, and the failure to make the motion as required by the rule results in a waiver of any objection to the search alleged to be illegal. We need not decide in this instance wheth-

---

**4.** The procedure relating to search and seizure now is found in Wyo.R.Crim.P. 41, effective March 24, 1992.

er waiver flows from failure to file the motion as required by the rule. The language of this rule is persuasive and, under Wyo.R.Crim.P. 41(g) and 12(g), effective March 24, 1992, the State's argument of waiver would be even more persuasive.

■ For this case, however, we need only determine whether the trial counsel's conduct was ineffective and if that ineffectiveness resulted in prejudice to the defendant. In analyzing this issue, a brief analysis of the lawfulness of the search and seizure is warranted. It is clear from the record no warrant was extant for Dickeson's arrest or for any search. These circumstances invoke the general rule that warrantless searches and seizures are *per se* unreasonable under both U.S. Const. amend. IV and Wyo. Const. art. 1, § 4. *Ortega.* The provisions of the Fourth Amendment are applicable to the states because of the due process clause found in U.S. Const. amend. XIV. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, reh'g denied 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72 (1961).

Upon trial counsel's cross-examination of the detective who interviewed Dickeson at the Casper Police Department, the following testimony was elicited:

Q. Now, let's see. Where did you arrest the defendant?

A. She was arrested at the Casper Police Department.

Q. She wasn't under arrest when you picked her up in Glenrock?

A. That is correct.

Q. She wasn't under arrest, why didn't you let her leave her purse wherever she wanted to?

A. Because I believed there might be evidence in the purse that had to do with a crime I was investigating.

Q. She wasn't free to leave?

A. Yes, she was free to leave, if she wanted.

Q. But she couldn't leave her purse in the car.

A. I asked her to bring her purse with her.

Q. Did you have a search warrant at that time?

A. No.

Q. What did you find in that purse?

A. The diary.

Q. She showed you the diary, didn't she?

A. No.

Q. She didn't?

A. No.

A logical inference from this testimony is that the officer took the diary, rather than a conclusion that it was voluntarily produced by Dickeson.

A review of the enumerated exceptions demonstrates a clear possibility this particular search and seizure was illegal. Dickeson was not under arrest at the time the diary was seized, and she did not consent to the search of her purse and the seizure of the diary. A strong argument was available that an illegal search and seizure occurred under either the Wyoming or United States Constitutions. That argument would encompass the proposition that the search and seizure was not made pursuant to a warrant and does not fit within any of the recognized exceptions. We cannot decide at this time that the search and seizure was illegal. Since it was not challenged by trial counsel in the trial court, we are satisfied the State is entitled to an opportunity to develop a record and demonstrate, if it can, that the search of the person and the seizure of Dickeson's diary was permissible. We are unable to say the plain error doctrine is available to challenge the illegality of the search and seizure because of the absence of information in the record. That question must be pursued in the district court upon retrial. We do conclude, however, the failure to file a motion and raise the issue demonstrates deficient performance of trial counsel.

We turn then to the second aspect of the *Strickland* test. Dickeson does not carry her burden by simply demonstrating the deficiency of her trial counsel's work. She also must demonstrate this deficiency resulted in some prejudice to her defense in order to obtain a reversal of her conviction. She must show "a reasonable probability that, but for counsel's errors, the outcome

of the trial would have been different." *Frias,* 722 P.2d at 147. If the search of Dickeson's purse and the seizure of the diary were found to be illegal, then Dickeson's subsequent statements which were the fruit of the illegal search and seizure would be subject to suppression. *People v. Wagner,* 114 Mich.App. 541, 320 N.W.2d 251 (1982). Without those statements, only a limited amount of evidence was available to the prosecution to support a conviction.

Without Dickeson's statements, the State would have been able to show by Flowers' testimony only that she believed Dickeson had been present in the Noland Feed store on August 9, 1989. There would have been nothing available from Dickeson to demonstrate she was even in Casper on the day of the fire. The evidence of the State would have been premised upon the description Flowers gave of the woman customer at the Noland Feed store, and the fact the woman customer later was identified as Dickeson. Against that testimony and the fact of the fire, the jury would have been in a position of weighing Dickeson's absence of memory as to her exact location on a specific day six months earlier. Furthermore, Dickeson would have enjoyed greater freedom of choice about testifying at the trial and, if she elected not to testify, the State would not have had any opportunity to discredit her. There indeed was a reasonable probability that, in the absence of the statements obtained after examining Dickeson's diary, and the advantage gained from those statements to prove she was in Casper on the day of the fire and to diminish Dickeson's credibility, the jury might have reached a different verdict.

■ Since we conclude it is reasonably likely the result of the trial might have been different except for the error of counsel in failing to move to suppress the evidence from Dickeson's diary and her statements that followed, the prejudice requirement of the *Strickland* test is satisfied. The significant reluctance of appellate courts to conclude there was ineffective assistance of counsel at trial must be acknowledged, and decisions reaching that conclusion are infrequent. *Frias.* Here,

however, the facts and circumstances demand that we hold the failure of trial counsel to question the search and seizure, and to object to the evidence flowing from it, was a failure resulting in ineffective assistance of counsel in a manner which prejudiced Dickeson's rights. We conclude the claim of ineffective assistance of counsel must be sustained on this basis. *See also United States v. Easter,* 539 F.2d 663 (8th Cir.1976), *appeal after remand,* 552 F.2d 230 (8th Cir.1977), *cert. denied,* 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977); *State v. Douglas,* 97 Idaho 878, 555 P.2d 1145 (1976).

In the usual case, ineffective assistance of counsel is going to be demonstrable because of a cumulation of errors with a determination that, in the entire context of the trial, the defendant either was, or was not, denied a right to a fair trial. *Gist.* In Dickeson's case, the failure to move to suppress Dickeson's statements and the diary, together with the failure to object at trial, were so egregious that these errors, without more, would demand reversal. There were other deficiencies, however.

■ Dickeson raises two additional claims of ineffective assistance of trial counsel. She contends counsel failed to object to a plethora of inadmissible evidence at trial, and she points to the failure of trial counsel to present an opening statement. Without elaboration, we agree there were numerous failures to object at trial when appropriate objections to the introduction of evidence, the testimony of an expert witness, and hearsay testimony would likely have been sustained. We have held in an earlier case that an opening statement is a useful device, but it need not be given in every instance. *Munden v. State,* 698 P.2d 621 (Wyo.1985). However, when the failure to deliver an opening statement is combined with other claims of ineffectiveness of trial counsel, it has a cumulative effect. *See People v. Bell,* 48 N.Y.2d 933, 401 N.E.2d 180, 425 N.Y.S.2d 57 (N.Y.1979), *reargument denied,* 49 N.Y.2d 802, 403 N.E.2d 466, 426 N.Y.S.2d 1029 (1980) (reversal due to ineffective assistance of counsel where the attorney

failed to request any pretrial hearings, conduct any voir dire examination of the jury, or make any opening statement); *United States v. Hammonds*, 425 F.2d 597 (D.C.Cir.1970) (reversal due to ineffective assistance of counsel where the attorney failed to appear at the arraignment, conduct any voir dire examination of the jury, make any opening statement, cross-examine two of the government witnesses, request any jury instructions, make any pretrial motions, speak to the question of bond after conviction, or speak on accused's behalf at sentencing); *Pinnell v. Cauthron*, 540 F.2d 938 (8th Cir.1976) (reversal due to ineffective assistance of counsel where the attorney filed two motions for suppression and discovery, had one meeting in chambers, failed to object to excludable portions of tape recordings and to conversations between the defendant and a co-conspirator). As these cases serve to illustrate, the failure to present an opening statement when coupled with other deficiencies can be cumulative and require reversal. We hold that is the result in this case.

Our examination of the record as a whole compels us, applying the two-prong test for ineffectiveness of counsel articulated in *Strickland*, to conclude trial counsel was ineffective. The failure to attack the illegal search and seizure; the failure to move to suppress the statements made by Dickeson after the seizure of her diary; and the failure to object to the introduction of the incriminating statements at trial all constitute ineffective assistance of counsel. The additional omissions and errors serve as further justification for concluding that the representation by trial counsel failed to reflect adequate preparation and participation in the trial in this case. We hold Dickeson has sustained her burden of demonstrating she was deprived of her constitutional right to effective assistance of counsel.

The case is reversed and remanded for a new trial. Since we reach that result because of our conclusion with respect to ineffective assistance of counsel, we do not address the other claims of error presented in this appeal.