**UNITED STATES of America, Appellee,**

v.

**Thomas Charles KELLY, Appellant.**

**No. 75–1686.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1975.

Decided Jan. 27, 1976.

Robert A. Hampe, St. Louis, Mo., for appellant.

Barry A. Short, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before ROSS, STEPHENSON and WEBSTER, Circuit Judges.

STEPHENSON, Circuit Judge.

This appeal requires review of appellant's conviction of interstate transportation of obscene matter.[1] Following in-

---

1. The statute, 18 U.S.C. § 1462 (1970), in relevant part proscribes the knowing use of a common carrier for carriage of any obscene material in interstate commerce and the knowing receipt from a common carrier of any obscene material so transported.

dictment and a non-jury trial resulting in a finding of guilt, the district court[2] imposed a six-month sentence of imprisonment and levied a $3,500.00 fine. The principal issues arising in this appeal relate to appellant's standing to contest the legality of governmental seizure of allegedly obscene matter[3] and the propriety of the seizure itself. Our review of the record and the controlling legal precedent reveals that the district court erroneously admitted into evidence various books and magazines seized by the government in violation of the Fourth Amendment. We accordingly reverse.

## I.

A threshold issue to be resolved is whether the appellant has standing to contest the alleged seizure of books and magazines which served as the evidential basis for his conviction. Appellant Thomas C. Kelly is the sole proprietor of Century News Company, an adult bookstore located in St. Louis, Missouri. For approximately seven years Century News transacted business with Sovereign News Company, a Cleveland, Ohio, corporation engaged in the business of distributing adult books and magazines. Century News was on an automatic distribution or standing order list at Sovereign News and received new publications on a weekly basis. During 1973 Sovereign News shipped large quantities of adult books and magazines to Century News C.O.D. by United Parcel Service (UPS), a common carrier authorized by tariff or certificate to transport goods from Ohio to Missouri.

On June 18, 1973, Gerald Spitznagel, loss prevention manager for UPS, became aware that a carton of goods shipped by Sovereign News to Century News was ripped open. In order to determine the extent of damage or loss, Mr. Spitznagel removed the contents of the carton, which he observed to be books and magazines bearing titles suggesting they depicted explicit sexual activity. Subsequently, he placed the magazines on his desk and proceeded to telephone William McDermott, a special agent for the FBI. Agent McDermott arrived, examined several of the magazines and took seven of them. He gave Mr. Spitznagel a receipt for those he retained. The carton was then rewrapped and ultimately picked up by Century News. Appellant later wrote a letter to Sovereign News requesting credit for the shortage created by the same magazines seized by the government and eventually received a credit memo for the shortages.

On six other dates throughout July and August of 1973, Mr. Spitznagel notified Agent McDermott of other damaged shipments of similar kind which were also shipped by Sovereign News and consigned to Century News. Specifically, on June 22, July 5, July 16, July 20 and August 28 Mr. Spitznagel noticed cartons, shipped by Sovereign News to Century News, which were ripped open in the UPS terminal. On each occasion, he took the cartons to his office, placed them on his desk and called Agent McDermott, who then seized samples of books or magazines from each shipment. Agent McDermott tendered receipts to UPS for the books and magazines retained. No warrant was ever obtained prior to the seizure of the materials. Without exception, the remainder of each carton was rewrapped and subsequently picked up by Century News. The United Parcel Service received payment for each shipment from Century News. On one other occasion, July 25, 1973, when a similar carton was discovered FBI agents proceeded to examine the books and magazines and mark them for identification. All of the materials in that particular shipment were replaced, and the carton was rewrapped.

---

**2.** The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri.

**3.** Appellant does not raise any issue on appeal with respect to the district court's finding that

the material is obscene. *See Miller v. California*, 413 U.S. 15, 24–26, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). With obscenity not at issue, further description of the materials is unnecessary.

Agent McDermott eventually purchased from Century News some of the books which had been marked. Indictment followed, charging appellant in seven counts with the violation of 18 U.S.C. § 1462 (1970), using a common carrier for interstate transportation of obscene matter.

Prior to trial, appellant filed a motion to suppress the admission of the books and magazines into evidence. By agreement of counsel, the motion to suppress evidence and an additional motion to dismiss the indictments were taken with the trial on the merits and were submitted on the evidence adduced at the trial. At the trial the books and magazines were introduced by the government, over appellant's objection, into evidence and obviously served as a critical basis for appellant's conviction.

Appellant contends that the trial court erred when it denied his motion to suppress the books and magazines since they were allegedly the result of illegal search and seizure. The government, however, asserts that Kelly has no standing to contest the search and seizure. Specifically, the government emphasizes that Kelly was not on the UPS premises at the time of the seizures, he was not charged with an offense that includes possession of the seized evidence as an element of the charged crime, and he alleged no proprietary or possessory interest in the premises. *See Brown v. United States*, 411 U.S. 223, 229, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *United States v. Groner*, 494 F.2d 499, 501 (5th Cir. 1974).

■ The requirement of standing in the context of the Fourth Amendment turns on whether the defendant was a victim of the search or seizure or the "one against whom the search [or seizure] was directed." *Jones v. United States*, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697 (1960). Generally, a defendant has a sufficient interest to constitute standing if he has an adequate possessory or proprietary interest in the place or object searched. *United*

*States v. Hunt,* 505 F.2d 931, 938 (5th Cir. 1974); *United States v. Banks,* 465 F.2d 1235, 1240 (5th Cir.), *cert. denied,* 409 U.S. 1062, 93 S.Ct. 568, 34 L.Ed.2d 514 (1972). But, a reasonable expectation of privacy in the enjoyment of a place or object may attach even when there is little or no proprietary interest. *See Mancusi v. DeForte,* 392 U.S. 364, 368, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); *Jones v. United States, supra,* 362 U.S. at 267, 80 S.Ct. 725. For example, in *Katz v. United States,* 389 U.S. 347, 352, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the Supreme Court held that an individual has a significant privacy interest in insulating his own telephone conversations from electronic monitoring, even when he makes his calls from a public telephone booth. Clearly, "[t]he premise that property interests control the right of the Government to search and seize has been discredited." *Warden v. Hayden,* 387 U.S. 294, 304, 87 S.Ct. 1642, 1648, 18 L.Ed.2d 782 (1967). At the same time, a person's protectable interest in his private property may often invoke a valid claim of privacy.

■■ In any event, the major theme of the Fourth Amendment is the right to privacy. A person may have a reasonable expectation of privacy in the absence of a traditional property right. Correspondingly, a bare assertion of a property interest, without a supporting expectation of privacy, will not give rise to a cognizable Fourth Amendment claim. *See generally Alderman v. United States,* 394 U.S. 165, 171–180, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

■ Logically, a person's protectable expectation of privacy must extend both to places *and objects.* A contrary conclusion would emasculate the plain language of the Fourth Amendment, which protects "papers" and "effects." *See United States v. Hunt,* 505 F.2d 931, 939 (5th Cir. 1974). *But see United States v. Groner,* 494 F.2d 499, 501 (5th Cir. 1974). The Supreme Court's most recent statement of the law of standing, despite some restrictive language, does not remove Fourth Amendment protection

from objects seized. *See Brown v. United States,* 411 U.S. 223, 229, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973). This conclusion is an inescapable implication from the Court's observation in *Brown* that the defendants "failed to allege any legitimate interest of any kind in the premises searched or the *merchandise seized.*" *Id.* (emphasis added.)

■ In the instant case, it is clear that Thomas Kelly was the sole victim of the government's investigation and the one against whom the search or seizure was directed. *See Jones v. United States, supra,* 362 U.S. at 261, 80 S.Ct. 725. The packages from which the books and magazines were taken were addressed to Century News. Appellant Kelly is the sole owner of Century News. Mr. Barry Short, Assistant United States Attorney, testified that he regarded Kelly and Century News to be "one and the same." The appellant's handwriting was positively identified with that appearing on Century News' letters requesting book shortage credit from Sovereign News. No other individuals, including employees of Sovereign News, the shipper and distributor of the materials, were prosecuted.

Furthermore, Kelly maintained more than a marginal proprietary interest in the packages of books and magazines. *See United States v. Hunt, supra,* 505 F.2d at 938; *Collins v. Wolff,* 337 F.Supp. 114, 117 (D.Neb.), *aff'd per curiam,* 467 F.2d 359 (8th Cir. 1972). The packages were consigned to Century News, in other words Thomas Kelly; many of the books and magazines were ultimately delivered to Kelly; and Kelly wrote Sovereign News and obtained credit for shortages.

■ These same facts support the conclusion that appellant was entitled to a reasonable expectation of privacy in the packages of books and magazines. *See Jones v. United States, supra,* 362 U.S. at 260–67, 80 S.Ct. 725; *United States v. Burke,* 506 F.2d 1165, 1170–71 (9th Cir. 1974), *cert. denied,* 421 U.S. 915, 95 S.Ct. 1576, 43 L.Ed.2d 781 (1975). The

government contends that appellant had no legitimate expectation of privacy since the packages were mailed C.O.D. to Century News and because a common carrier has a right to inspect packages. The government emphasizes that Kelly did not come into possession and had no right to possession until he had paid for the shipments. The contentions of the government, however, are too firmly tied to concepts of traditional property law, and a defendant's expectation of privacy should not be deemed unreasonable merely because he had not yet paid postage nor because of a right of the UPS to inspect packages. *See Mancusi v. DeForte,* 392 U.S. 364, 368–70, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); *Jones v. United States,* 362 U.S. 257, 260–67, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

■ The denial of standing to appellant would subject Kelly to contradictory assertions of power by the government. *Jones v. United States, supra,* 362 U.S. at 263, 80 S.Ct. 725, created the doctrine of "automatic standing" which is applicable to cases where possession of the seized evidence is itself an essential element of the offense with which the defendant is charged. In such cases the government is precluded from denying that the defendant has the requisite interest to challenge admission of the evidence. In the instant case, Kelly has not been charged with a crime in which possession of seized evidence is an essential element. *See* 18 U.S.C. § 1462 (1970). Kelly has been subjected, however, to a similar form of contradictory assertion of governmental power as that involved in *Jones.* Appellant has been convicted of the knowing *use* of an interstate carrier for the transportation of obscene materials. The government has attempted to show that Kelly exercised dominion and control over interstate shipments of purportedly obscene books at the time of their seizure and simultaneously has contended that Kelly does not have a sufficient interest to challenge the search or seizure of the same materials. Proper administration of criminal justice should not include such

contradictory assertions of governmental power. *See Brown v. United States, supra,* 411 U.S. at 228–29, 93 S.Ct. 1565; *Jones v. United States, supra,* 362 U.S. at 263, 80 S.Ct. 725. For all of the preceding reasons, we conclude that appellant Thomas C. Kelly has the requisite standing to contest the alleged seizure of the books and magazines in question.

## II.

The remaining question is whether the alleged seizure of the books and magazines was unreasonable within the meaning of the Fourth Amendment. The government asserts and appellant concedes that there was no governmental *search* since the initial discovery of the packaged materials was the result of a routine damage inspection conducted by United Parcel Service employee Gerald Spitznagel.

■■■■■ Individual conduct devoid of governmental involvement is beyond the scope of the exclusionary rule. *Burdeau v. McDowell,* 256 U.S. 465, 475–76, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); *see Coolidge v. New Hampshire,* 403 U.S. 443, 487, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). For example, searches conducted by air carriers generally are not subject to Fourth Amendment protection. *See United States v. Pryba,* 163 U.S.App.D.C. 389, 502 F.2d 391 (1974), *cert. denied,* 419 U.S. 1127, 95 S.Ct. 815, 42 L.Ed.2d 828 (1975); *United States v. Echols,* 477 F.2d 37, 39 (8th Cir.), *cert. denied,* 414 U.S. 825, 94 S.Ct. 128, 38 L.Ed.2d 58 (1973); *United States v. Burton,* 475 F.2d 469, 471 (8th Cir.), *cert. denied,* 414 U.S. 835, 94 S.Ct. 178, 38 L.Ed.2d 70 (1973). The initial search of the packages conducted by Mr. Spitznagel is beyond the scope of the exclusionary rule since it has not been established that the UPS search was instigated or assisted by law enforcement officers. *Cf. Corngold v. United States,* 367 F.2d 1, 4–6 (9th Cir. 1966). Governmental involvement in the instant case, therefore, is limited to the activity of the FBI after first being called by Spitznagel. It must be determined whether the *seizure* of books and magazines by FBI Agent William McDermott constituted governmental conduct so unreasonable as to necessitate the operation of the exclusionary rule.

■■■■■ Warrantless searches or seizures are per se unreasonable unless there are special circumstances which excuse compliance with the Fourth Amendment warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971). Agent McDermott testified that an attempt was made at one time to obtain a warrant from the court clerk, but he declined to issue the warrant because he was only an acting magistrate. Since the government concedes that the seizure was conducted without a warrant, the FBI seizure of the books and magazines in the instant case must be considered unreasonable if it does not come within "a few specifically established and well-delineated exceptions" to the Fourth Amendment. *Id.* The burden is on the government to show the applicability of a legitimate exception to the warrant requirement. *Vale v. Louisiana,* 399 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970).

■■■■■ Our review of the record compels the conclusion that the government has failed to sustain its burden of establishing a traditional exception to the warrant requirement. The facts do not show a search conducted incident to a valid arrest. *Cf. Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Although the FBI seizure of the books and magazines was made with the consent of the UPS, it is clear that such consent does not satisfy the requirements of the Fourth Amendment. *See Stoner v. California,* 376 U.S. 483, 488–90, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). Moreover, the consignment of materials to a common carrier does not constitute an abandonment of appellant's interest in the contents of the packages. *See Corngold v. United States,* 367 F.2d 1, 6–7 (9th Cir. 1966). The record also fails to reveal exigent circumstances,

such as the potential destruction of evidence. The materials were entirely within the control of the UPS, and there is no indication that Kelly intended to destroy the materials in question. In fact, it does not appear that Kelly was even aware of the FBI investigation since he continually sought credit from Sovereign News for the missing materials that were seized. *See Johnson v. United States,* 333 U.S. 10, 14–15, 68 S.Ct. 367, 92 L.Ed. 436 (1943).

To justify the warrantless seizure of the books and magazines, the government principally relies on the "plain view" exception to the general Fourth Amendment warrant requirement. *See, e. g., Harris v. United States,* 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). The government emphasizes that UPS employee Spitznagel discovered the materials during a damage inspection and that FBI Agent McDermott merely seized books and magazines which were in plain view, sitting on Spitznagel's desk at the United Parcel Service. It is contended that the materials constituted openly visible contraband or evidence of a crime which could be seized without a warrant.

 It is well established that under certain circumstances the police may seize evidence in plain view without a warrant. *Harris v. United States, supra,* 390 U.S. at 236, 88 S.Ct. 992. Because of the *nature* of the property seized in the instant case, however, the seizure cannot be justified on the basis of the plain view exception.[4] "A seizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material." *Roaden v. Kentucky,* 413 U.S. 496, 501–03, 93 S.Ct. 2796, 2800, 37 L.Ed.2d 757 (1973). The Fourth Amendment should be read in conjunction with the First Amendment, rather than "in a vacuum." *Id.* The proper seizure of

books and magazines, which are presumptively protected by the First Amendment, demands a greater adherence to the Fourth Amendment warrant requirement. *Roaden v. Kentucky, supra,* 413 U.S. at 504, 93 S.Ct. 2796; *A Quantity of Books v. Kansas,* 378 U.S. 205, 212, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); *Wilhelm v. Turner,* 298 F.Supp. 1335, 1337 (S.D.Iowa 1969), *aff'd,* 431 F.2d 177, 180 (8th Cir. 1970), *cert. denied,* 401 U.S. 947, 91 S.Ct. 919, 28 L.Ed.2d 230 (1971). As the Supreme Court stated in *Roaden v. Kentucky, supra:*

> The seizure of instruments of a crime, such as a pistol or a knife, or "contraband or stolen goods or objects dangerous in themselves," are to be distinguished from quantities of books and movie films when a court appraises the reasonableness of the seizure under Fourth or Fourteenth Amendment standards.

413 U.S. at 502, 93 S.Ct. at 2800 (citations omitted). Consequently, in the absence of exigent circumstances in which police must act immediately to preserve evidence of the crime, we deem the warrantless seizure of materials protected by the First Amendment to be unreasonable. *See Marcus v. Search Warrant,* 367 U.S. 717, 729–38, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961).

Such a seizure without a warrant is unreasonable not because it would be easier to obtain a warrant but because prior restraint of the right to expression demands a more strict evaluation of reasonableness. *See Roaden v. Kentucky, supra,* 413 U.S. at 504, 93 S.Ct. 2796. For example, in *Marcus v. Search Warrant,* 367 U.S. 717, 732, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), and *Lee Art Theatre v. Virginia,* 392 U.S. 636, 637, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968), the Supreme Court held that a warrant for the seizure of allegedly obscene material

---

4. Parenthetically, we observe that the circumstances of the seizure do not seem to satisfy the inadvertence requirement of the typical plain view situation. *See Coolidge v. New Hampshire,* 403 U.S. 443, 469, 91 S.Ct. 2022,

29 L.Ed.2d 564 (1971). In the instant case, FBI Agent McDermott was telephoned by Mr. Spitznagel and requested to come to the UPS office in order to examine the books and magazines already discovered.

could not be issued on the mere conclusionary opinion of a police officer that the material sought to be seized was obscene. In the absence of exigent circumstances, therefore, seizure of First Amendment materials should observe traditional constitutional safeguards and allow a judge to focus searchingly on the question of obscenity.

The government contends that the seizure of the books by FBI Agent McDermott was reasonable, even without a warrant, since only sample copies of the materials were taken from the shipments. We find this distinction untenable, however, and inconsistent with the thrust of recent Supreme Court decisions. *See Roaden v. Kentucky*, 413 U.S. 496, 501–06, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973). A contrary conclusion would reduce First Amendment materials such as books and magazines to lesser rather than greater adherence to the warrant requirement of the Fourth Amendment. *See Roaden v. Kentucky, supra*, 413 U.S. at 504, 93 S.Ct. 2796.

We conclude that the governmental seizure [5] of the books and magazines in the instant case was unreasonable under the Fourth Amendment since the seizure was conducted without first obtaining a warrant.[6] As the Supreme Court stated in *Roaden v. Kentucky, supra*, 413 U.S. at 506, 93 S.Ct. at 2802:

If, as *Marcus* and *Lee Art Theatre* held, a warrant for seizing allegedly obscene material may not issue on the mere conclusionary allegations of an officer, *a fortiori*, the officer may not make such a seizure with no warrant at all.

It is clear that exigent circumstances may make it reasonable to permit police action without prior judicial evaluation. *Roaden v. Kentucky, supra*, 413 U.S. at 505, 93 S.Ct. 2796. We, however, are not aware of the existence of any exigent circumstances in the instant case. The FBI had ample opportunity to obtain a valid warrant based on the affidavit of Mr. Spitznagel or Agent McDermott prior to the seizure of any books or magazines. This is not a case involving contraband or objects dangerous in themselves.

The judgment of the district court is reversed, and this case is remanded for further proceedings not inconsistent with this opinion. Our remand of the case on the basis of the search and seizure issue renders unnecessary any consideration of appellant's additional contention that the evidence did not show Kelly's knowing use of a common carrier and his scienter or knowledge of the shipments within the meaning of 18 U.S.C. § 1462 (1970).

Reversed and remanded.

---

**5.** The books and magazines enumerated in Count VI of Kelly's indictment were not confiscated at the UPS office. These particular materials were examined by the FBI, marked, replaced in packages and later purchased from Century News by FBI agents. Given the knowledge obtained by the government from the five previous examinations and seizures of appellant's materials at UPS and the physical examination and marking of the books and magazines themselves, we also regard the governmental interference with these particular materials as an unreasonable search or seizure.

**6.** The government alleges that various Supreme Court decisions involving search or seizure of First Amendment materials are distinguishable from the instant case since many dealt with massive seizures in a commercial setting. *See, e. g., A Quantity of Books v. Kansas*, 378 U.S. 205, 206–15, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964). Accordingly, the government contends that a prior adversary hearing for a judicial determination of obscenity was not required. We, however, need not consider whether a prior hearing was required since the FBI did not even obtain a warrant in the instant case.