UNITED STATES of America, Appellee,

v.

Harold Peter ENTRINGER, Appellant.

No. 75–1767.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 9, 1976.

Decided March 12, 1976.

Rehearing Denied April 1, 1976.

Dewey S. Godfrey, Jr., St. Louis, Mo., argued and filed brief, for appellant.

Richard E. Coughlin, Asst. U. S. Atty., St. Louis, Mo., argued and filed brief, for appellee.

Donald J. Stohr, U. S. Atty., St. Louis, Mo., also had name appearing on brief.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and VAN PELT, Senior District Judge.*

BRIGHT, Circuit Judge.

Harold Peter Entringer appeals his conviction of one count of using a common carrier to transport obscene material in violation of 18 U.S.C. § 1462. We affirm.

Most of the facts were stipulated at trial and the rest are not seriously disputed.

On May 8, 1974, a two-package c. o. d. shipment addressed to appellant-Entringer at his residence, Risque Farms, Manchester, Missouri, arrived at the Trans World Airlines offices in St. Louis, Missouri. The shipment was being carried by TWA for Emery Air Freight. Emery is an air freight forwarder and uses commercial air-

* ROBERT VAN PELT, Senior District Judge, District of Nebraska, sitting by designation.

lines to transport its shipments. One of the two packages had been opened and apparently pilfered.

Upon observing the apparent pilferage, TWA employees isolated the packages and in the early afternoon of May 8, called an FBI agent, Leon Canton, to report a possible theft from an interstate shipment. The TWA employees indicated that company policy required them to inventory the shipment to determine the extent of any loss. Because Canton was involved in another investigation, he asked TWA to wait until the following morning so that he could be present during the inventory. TWA also notified Emery that delivery of the packages would be delayed pending further investigation.

On the afternoon of May 8th, after the shipment had arrived, appellant-Entringer attempted to pick it up at the Emery Air Freight offices to which TWA would normally have forwarded the shipment. He was informed there had been possible pilferage and the packages were being held pending an FBI investigation.

On the morning of May 9th, agent-Canton arrived at the TWA offices. The TWA employees then proceeded to inventory the two packages. Since the invoice was contained in a second unopened package, it was necessary to open both packages in order to obtain a complete inventory. The invoice indicated that the packages should have contained 124 items. Although the invoice listed the items shipped as "leather novelties," they were, in fact, reels of 8mm films. Only 114 reels were contained in the two packages. The films were marked "not to be sold to minors." Packed with the films were advertising pamphlets and brochures which graphically illustrated the film's contents. Appellant does not deny that the films and pamphlets were legally obscene.

After viewing this material, agent-Canton seized it and brought the material to the FBI offices. As a result of this seizure, an investigation was launched into the use of common carriers for importation of obscene material into the St. Louis area.

On April 7, 1975, a United States Grand Jury returned the indictment in the present case. That same day FBI agent Thomas Kubic arrested appellant-Entringer. Evidently as a result of alarm generated by this arrest, Entringer contacted the P & B One Stop Records Shop. He told the manager whom he had known for years that he was expecting a c. o. d. shipment from the United Parcel Service. Entringer instructed the manager to refuse delivery and to inform United Parcel Service that the shipment should be returned to California. When United Parcel attempted delivery, the manager did as Entringer had requested.

The shipment therefore was returned to the United Parcel Service unclaimed package area. There it was observed by agent-Kubic. He photographed the package. On the basis of the photograph and the seizure of the previous shipment to appellant 11 months earlier, together with other information, Kubic obtained a search warrant and seized the package.

Entringer asserts the following three grounds for reversal:

1) The district court abused its discretion by refusing to dismiss the indictment for failure of the grand jury to actually view the obscene films.

2) The obscene material was seized without a warrant in violation of the fourth amendment.

3) Additional obscene material used as evidence of appellant's knowledge and intent was illegally seized pursuant to an invalid warrant.

■ Appellant's challenge to the indictment is without merit. The trial record indicates that the Grand Jury did view the advertising pamphlets and brochures which accompanied the films. It is undenied that these were obscene. In addition, the Grand Jury received the detailed testimony of special agent Allen Rogers describing the contents of the film. On the basis of the pamphlets and brochures and this testimony, the Grand Jury declined to view the films which were available to them. Agent-Rogers' testimony was not hearsay

as appellant claims. Although not the "best evidence," his testimony was nonetheless direct evidence of the contents of the films. Even if it were hearsay, it would be adequate to support this indictment. *United States v. Akin,* 464 F.2d 7 (8th Cir.), *cert. denied,* 409 U.S. 981, 93 S.Ct. 315, 34 L.Ed.2d 244 (1972); *see also Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956).[1]

The second issue raised by appellant is more difficult. The facts are very close to those in *United States v. Kelly,* 529 F.2d 1365 (8th Cir., 1976). There, even though the appellant conceded that the search was conducted by a private party and therefore did not violate the fourth amendment, the court held it to be error for the FBI to seize allegedly obscene material without first obtaining a warrant.

■ Here, appellant denies that the search was private. The facts, however, establish the contrary. The uncontradicted evidence is that TWA pursues the policy of taking inventory of apparently pilfered shipments in order to determine the extent of any loss. The search did not lose its private character because TWA chose to wait a reasonable time for the presence of an FBI agent before making the inventory. The agent's presence was desirable both to assure accuracy of the inventory and to assist in preventing the destruction of any evidence of the theft which might have been discovered during the course of the private inventory. The fourth amendment does not require the FBI to obtain a warrant before entering the premises of a common carrier with the carrier's consent to observe an inventory conducted because of the carrier's own policies. *See United States v. Pryba,* 163 U.S.App.D.C. 389, 502 F.2d 391, 398 (1974); *United States v. Echols,* 477 F.2d 37, 39 (8th Cir.), *cert. denied,* 414 U.S. 825, 94 S.Ct. 128, 38 L.Ed.2d 58 (1973). Under the circumstances, we hold the search was private and thus did not violate appellant's fourth amendment rights. As in *Kelly,* the lawfulness of the warrantless seizure remains as the crucial issue.

In *Kelly,* the court expressly found that no exigent circumstances justified the seizure. 529 F.2d at 1371–1372. The obscene material there was consigned to an established news-stand where it was to be incorporated into inventory. The recipient of the material was unaware of the FBI's interest in the shipments and was therefore unlikely to destroy or hide the material. Indeed, he felt so secure that he periodically submitted claims to the shipper for shortages caused by the FBI's seizures of samples from various shipments.

■ By contrast, here a genuine danger existed that the evidence would be destroyed. The recipient, Entringer, did not generally incorporate the shipments which he received into the stock of an established business. Instead, according to appellant's statement of the facts, he had "on numerous occasions reshipped [such] packages to Guam * * *." Further, on May 8th, prior to the time that the FBI had any idea that the contents of the shipment might be obscene, appellant had attempted to obtain delivery but was informed that the packages were being held until the apparent cargo theft could be investigated. Had agent-Canton not seized the films at the time of the inventory the evidence would likely have been lost through delivery to Entringer. These exigent circumstances justified a warrantless seizure of the films. *See Roaden v. Kentucky,* 413 U.S. 496, 505 n. 6, 93 S.Ct. 2796, 2802, 37 L.Ed.2d 757, 765 (1973).

■ Appellant's third contention, attacking the warrant issued for a second ship-

---

1. Appellant probably waived his objection to the indictment by failing to make an adequate record at trial. Nothing in the trial record indicates that the Grand Jury failed to view the films. However, on appeal, the United States, without objection from defendant, has submitted the affidavit of special agent-Rogers setting out the facts recited above. This affidavit was accompanied by a motion to waive Federal Rule of Criminal Procedure 6(e). Appellant has not opposed our reception of this affidavit, and both parties referred to the contents of the affidavit at oral argument.

ment 11 months later lacks substantial merit. The contents had been shipped to appellant c. o. d. Whatever interest he may have had in that shipment prior to delivery terminated when, at his instructions, delivery was refused and United Parcel Service was instructed to return the product to the sender. It is clear that as of that time appellant abandoned any privacy interests which he might have had in the contents of the package. The Supreme Court has been emphatic that

> [t]he established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. [*Alderman v. United States,* 394 U.S. 165, 171–72, 188 n. 1, 89 S.Ct. 961, 965, 22 L.Ed.2d 176, 185 (1969).]

*See Brown v. United States,* 411 U.S. 223, 229, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208, 213–214 (1973). Therefore, appellant lacks standing to challenge the Government's search and seizure regardless of its legality.

Accordingly, we affirm appellant-Entringer's conviction.