**UNITED STATES of America,
Appellant,**

v.

**James Willis ROBERTS, Appellee.**

**No. 79–1396.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 16, 1980.

Decided March 12, 1980.

---

Gene C. Napier, Asst. U. S. Atty., Kansas City, Mo. (argued), and Ronald S. Reed, Jr., U. S. Atty., Kansas City, Mo., on brief, for appellant.

Philip F. Cardarella, Kansas City, Mo., for appellee.

Before LAY, Chief Judge, and HEANEY, BRIGHT, ROSS, STEPHENSON, HENLEY and McMILLIAN, Circuit Judges.

HENLEY, Circuit Judge.

This is an appeal by the government from an order of the United States District Court for the Western District of Missouri (District Judge William R. Collinson) suppressing as evidence two lots of marijuana which had come into the possession of the government and which it planned to use as evidence in the trial of the defendant, James Willis Roberts, who had been indicted on two counts of possession of the drug with intent to distribute it. The charges were brought under 21 U.S.C. § 841(a)(1). We have jurisdiction of the appeal by virtue of 18 U.S.C. § 3731.

The appeal was heard originally by a panel consisting of Circuit Judge Bright, the writer, and United States Senior District Judge John K. Regan of the Eastern District of Missouri sitting by designation. The majority of the panel voted to reverse the judgment of the district court on both counts of the indictment. Judge Bright dissented. Thereafter the defendant moved for rehearing and rehearing en banc. Rehearing en banc was granted. This is the opinion of the majority of the en banc court.

I.

After having been indicted, the defendant moved to suppress the evidence contending that the seizure of the material by law enforcement officers without a warrant was unreasonable and violated his rights under the fourth amendment to the Constitution of the United States.

In resisting the motion the government took the position that the initial search of certain private storage facilities where the contraband had been concealed and the initial "seizure" of the material were purely private, and that the fourth amendment was inapplicable.

The district judge rejected that contention, and in so doing he relied heavily on the opinion of this court in *United States v. Kelly*, 529 F.2d 1365 (8th Cir. 1976). In coming to his conclusion that the fourth amendment required suppression of the evidence, the district judge found that the search and seizure with which he was concerned did not fall within any of the recognized exceptions to the warrant requirement of the amendment, including the exception based on the familiar "plain view" doctrine that has been considered frequently by this court.

For reversal, the government argues that *Kelly, supra,* was not decided correctly and that, in any event, that case is not applicable to the facts of this case. And the government also contends that the ultimate seizure of the material was justified by reference to the plain view doctrine.

The district court held an evidentiary hearing on the defendant's motion and on May 9, 1979 it filed an unpublished memorandum opinion dealing with the motion. The controlling facts relative to the discovery and seizure of the contraband are not in dispute, and we can do no better than copy the succinct statement of those facts that appears in the opinion of the district court.

The following facts were developed during an evidentiary hearing that was held by this Court on April 17, 1979. In November, 1978, defendant was the lessee of certain storage units at Stor-All of Independence and at Stor-All of Gladstone. The storage units at these locations were generally kept locked by the lessees with the lessees' own padlocks. On the evening of November 29, 1978, employees at the Stor-All of Independence and at the Stor-All of Gladstone notified Tom Pepper, who is the general manager of all of the Stor-All businesses in the Kansas City area, that they had discovered several unlocked storage units at these two locations. After hearing of the unlocked units, Mr. Pepper and a private investigator who worked for Mr. Pepper went to the Gladstone Stor-All to investigate the unlocked units. In the course of their investigation, they discovered broken padlocks near several of the unlocked units. Mr. Pepper and the private investigator entered the unlocked units and found, in one of them, what appeared to be a large bag of marihuana. Mr. Pepper closed the door to that storage unit and, along with the private investigator, went to the Independence Stor-All.

At the Independence Stor-All, Mr. Pepper again discovered broken padlocks near several unlocked storage units. Mr. Pepper looked into these unlocked units and discovered, in one of them, several boxes of what appeared to be marihuana. Mr. Pepper called the Kansas City police department and told them what he had discovered. At approximately 9:00 p. m. on November 29, 1978, several law enforcement officers, including D.E.A. Task Force Officer Jack Albrecht, arrived at the Independence Stor-All. Mr. Pepper took the officers to the storage unit where he had observed the boxes and he explained to the officers what he had seen. The officers then entered the storage unit and seized what was later identified to be approximately 900 pounds of marihuana.

The following morning, the officers met Mr. Pepper at the Gladstone Stor-All. Mr. Pepper took the officers to the storage unit where he had observed the large bag on the prior evening. The officers entered the storage unit and seized the bag, which was later found to contain approximately 56 pounds of marihuana.

The officers who seized the marihuana did not, on either the evening of November 29, 1978 or the morning of November 30, 1978, have warrants for the search of the storage bins or for the seizure of the marihuana.

After investigation, the officers identified defendant Roberts as the lessee of the storage bins in which the marihuana was found. Defendant Roberts was subsequently indicted for two counts of possession with intent to distribute marihuana, in violation of 21 U.S.C. § 841(a)(1) (1976).

The trial court also found that the search and seizure were not incident to a lawful arrest, and that no exigent circumstances existed that would have justified warrantless proceedings by law enforcement officers. The government does not quarrel with those findings.

In considering whether the search and seizure could be justified under the plain view exception to the amendment's warrant requirement, the trial court referred to *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). Referring to *Chapman* the district court said:

> ... In *Chapman v. United States*, 365 U.S. 610, [81 S.Ct. 776, 5 L.Ed.2d 828] (1961), the Court rejected the argument that law enforcement officers may gain entry to a building at a landlord's invitation and then seize anything within plain view. The Court held, 'to uphold such an entry, search and seizure "without a warrant would reduce the [Fourth] Amendment to a nullity and leave [tenants'] homes secure only in the discretion of [landlords]." ' *Chapman v. United States, supra* at 616–17, 81 S.Ct. at 779–80.

■ In refusing to apply the plain view doctrine to this case the district court was clearly correct. In order for that doctrine to be applicable three conditions must be met: (1) the officer who observes the material must be where he has a legal right to be; (2) the discovery must be inadvertent; and (3) the contraband or otherwise incriminatory nature of the material must be apparent immediately. *United States v. Pugh*, 566 F.2d 626, 627 (8th Cir. 1977), *cert. denied*, 435 U.S. 1010, 98 S.Ct. 1885, 56 L.Ed.2d 393 (1978); *United States v. Wilson*, 524 F.2d 595, 598 (8th Cir. 1975), *cert. denied*, 424 U.S. 945, 96 S.Ct. 1415, 47 L.Ed.2d 351 (1976). *See also* the discussion of the doctrine that appears in *Coolidge v. New Hampshire*, 403 U.S. 443, 464–73, 91 S.Ct. 2022, 2037–42, 29 L.Ed.2d 564 (1973), wherein the Court emphasized the importance in plain view context of the "inadvertency" requirement.

■ In this case there is no question that when the officers observed the marijuana, they were where they had a legal right to be, and we will assume that the contraband nature of the material was immediately apparent to experienced officers if not to laymen. It cannot be contended, however, that the officers observed this marijuana inadvertently; they had been called to the scene to look at it, and when they came on the Stor-All premises at Independence and at Gladstone, they knew exactly what they were looking for and what they might reasonably expect to find.

## II.

Turning now to the question of whether the warrantless actions of the officers in this case were reasonable apart from any of the exceptions to the general requirement of a warrant, which exceptions have been mentioned, both sides recognize that where a search and seizure are conducted by private parties without government participation, the fourth amendment is not applicable even though the seized material is later turned over to the officers and used as evidence in a criminal prosecution. *United States v. Kelly, supra*, 529 F.2d at 1371 and cases cited.

Where a search and an ultimate seizure are initiated and largely carried out by private persons, but where law enforcement officers get involved in the overall process and ultimately take over the material seized, this court has held that a court in determining whether there has been a violation of the fourth amendment must consider: (1) official involvement in the initial search, and (2) official involvement in the effective seizure of the item or items in question. *United States v. Haes*, 551 F.2d 767, 770 (8th Cir. 1977); *cf. United States v. Entringer*, 532 F.2d 634 (8th Cir.), *cert. de-*

*nied*, 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976).

In this case it is clear that the marijuana in question was initially discovered by the Stor-All people; there was no official involvement in connection with the discovery by either state or federal officers. Our inquiry, then, is whether there was such an official involvement in the ultimate seizures of the drug as to bring the fourth amendment into play.

As we have observed, the trial judge in answering that question in the affirmative relied heavily on *United States v. Kelly, supra*, which involved allegedly obscene publications that had been transported in interstate commerce and received by the defendant in alleged violation of 18 U.S.C. § 1462. Those publications were at least arguably protected by the first as well as by the fourth amendment. Without going into detail with respect to the facts of *Kelly*, it may be said that on seven or eight separate occasions cartons of publications moving by common carrier from Cleveland, Ohio to St. Louis, Missouri, where defendant's adult bookstore was located, were discovered to have been broken in transit. In line with the policy of the carrier, one of its employees examined the contents of the broken parcels and came to the conclusion that they were obscene. On each occasion the employee notified a particular agent of the Federal Bureau of Investigation. On the first and on several subsequent occasions, the agent took samples of the publications from the parcels which were then resealed and delivered to the bookstore. On the final occasion the agent took no samples but he did mark the publications for identification and later purchased one of them. Neither the shipper nor the consignee was aware of the ongoing investigation, and indeed with respect to the parcels from which the agent took samples, the defendant obtained credit from the shipper for the publications that he did not receive.

Citing *Roaden v. Kentucky*, 413 U.S. 496, 501–06, 93 S.Ct. 2796, 2799, 2802, 37 L.Ed.2d 757, this court held that where first amendment materials are involved, there must be a closer adherence to the fourth amendment than in cases involving such things as contraband or weapons. *United States v. Kelly, supra*, 529 F.2d at 1373. And the court concluded that on the record before it, there was enough government involvement to entitle the defendant to the protection of the amendment.[1]

In search and seizure context where searches and seizures of obscene material were initiated and largely effected by private parties, and where the defendant in a criminal prosecution instituted later has moved to suppress the seized material as evidence, two circuits have declined to follow *Kelly's* holding that first amendment materials are entitled to more fourth amendment protection than items not protected by the former amendment. *United States v. Sanders*, 592 F.2d 788 (5th Cir. 1979); *United States v. Sherwin*, 539 F.2d 1 (9th Cir. 1976), *cert. denied*, 437 U.S. 909, 98 S.Ct. 3101, 57 L.Ed.2d 1140 (1978).

### III.

As to the distinction drawn in *Kelly* between a case involving the first amendment and a case not involving that amendment, we think that it should be said, first, that the marijuana involved here can hardly be said to have been entitled to any first amendment protection.

Second, the police involvement in this case overall was not comparable in either quality or persistence to the official involvement present in the *Kelly* case.

### IV.

As we have pointed out, two separate discoveries and seizures of drugs are involved in this case. The first count of the indictment relates to the unlawful possession of marijuana stored at the Independ-

---

1. It should be noted perhaps that *Roaden v. Kentucky*, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973), did not involve any private action. There an allegedly obscene picture film was seized without a warrant by the local sheriff who was in the company of the local prosecuting attorney.

ence facility; the second count relates to the unlawful possession of the substance stored at the Gladstone facility. However, and this is a somewhat confusing facet of the case, the Stor-All personnel discovered the contraband at Gladstone before they discovered the contraband at Independence.[2]

In neither instance are we concerned with the "discovery" of the drug. The discoveries were clearly private, and they were clearly proper. Our concern is with the constitutionality of the ultimate actions of the officers in taking physical possession of the respective quantities of contraband that have been described.

Since the marijuana was discovered at Gladstone before the discovery at Independence, we first consider the validity of the Gladstone seizure (Count II). The discovery at Gladstone was made in the comparatively early evening of November 29 and after it was made the Stor-All personnel proceeded to Independence. Before leaving the Gladstone facility the employees secured the premises by bolting an exterior door. However, counsel for the government conceded in effect at argument before the court en banc that this "securing" of the premises was simply routine and thus it was not designed particularly to prevent the lessee of the locker in which the marijuana was found from reacquiring possession of his stored property whatever it might have been.

The Stor-All people met the police at Gladstone on the morning of November 30, at which time the officers entered the facility and observed and took possession of the marijuana.

From our consideration we are satisfied that the seizure at Gladstone was an unjustified warrantless seizure of the drug by law enforcement officers, and that the evidence based on that seizure was properly suppressed. We, therefore, affirm the district court with respect to Count II.

A different situation is presented as to Count I. When Stor-All agents found some 900 pounds of a substance that appeared to be marijuana stored in the Independence facility, they immediately mounted guard over the premises and notified the police. Officers appeared on the scene promptly and took possession of the material in question which turned out to be marijuana. The work of the officers with respect to the seizure at Independence was not completed until the small hours of November 30, 1978 which may tend to explain why the Gladstone facility was not immediately visited by the officers.

Had a claimant of the material stored at Independence undertaken to take possession of the material between the time it was discovered by private persons and the time of the arrival of the officers, it is unreasonable to think that he would have been allowed to pick up, destroy, or take away the contraband.

We conclude, therefore, that the drug stored at Independence had been seized privately before the arrival of the officers, and that the district court erred in suppressing evidence based on that seizure.

Accordingly, we reverse the district court as to Count I while affirming as to Count II. The case is remanded for further appropriate proceedings.

BRIGHT, Circuit Judge, concurring and dissenting:

I concur in the result insofar as the majority holds that the police seizure at Gladstone was unreasonable. I do not agree, however, that a principled distinction exists under the fourth amendment between the police seizures at Independence and Gladstone. As to both storage facilities, the record establishes that

—the lessor left the apparent contraband in storage until the police arrived;

—the lessor closed the doors to the unlocked units and secured the outside gate;

2. · The quantity of the drug discovered at Independence was very much larger than the quantity discovered at Gladstone.

—the police, not the lessor, actually removed the evidence.

The point of distinction made between the lessor's conduct at Independence (held to be a private seizure) and Gladstone (held not to be a private seizure) emphasizes the fact that the lessor mounted a guard over the premises at Independence and thus effectively barred the lessee from removing or destroying the contraband in the storage unit. I presume that a lessor of individual storage units may also effectively bar a lessee from access to such unit by bolting an exterior door, as at Gladstone. *Ante* at 685. A hotel proprietor who possesses the hotel guest's room key similarly possesses the power to bar the guest from his room. When the hotel owner turns the key over to the police to search the room, is that search and seizure lawful under fourth amendment strictures? *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), suggests not.

Neither appellant nor the majority cites any case law in support of the distinction drawn in this case. The expectation of privacy which underpins an owner's right to be free of unreasonable governmental seizure of his possessions does not rest upon an owner's relative ability to retrieve his property. *See Stoner v. California, supra; United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979).

In *United States v. Chadwick, supra*, FBI agents had lawful possession of a footlocker with probable cause to believe it contained marijuana. The owners had been arrested and " 'there was no risk that whatever was contained in the footlocker trunk would be removed by the defendants or their associates.' " *Id.* at 4, 97 S.Ct. at 2479, *quoting* an FBI agent. The Supreme Court observed:

With the footlocker safely immobilized, it was unreasonable to undertake the addi-

tional and greater intrusion of a search without a warrant. [*Id.* at 13, 97 S.Ct. at 2484 (footnote omitted).]

A footnote to this holding makes it clear that the focus of the fourth amendment is the owner's expectation of privacy, not his inability to retrieve the contents. The footnote reads in part:

Respondent's principal privacy interest in the footlocker was, of course, not in the container itself, which was exposed to public view, but in its contents. A search of the interior was therefore a far greater intrusion into Fourth Amendment values than the impoundment of the footlocker. Though surely a substantial infringement of respondents' use and possession, the seizure did not diminish respondents' legitimate expectation that the footlocker's contents would remain private. [*Id.* at 13 n.8, 97 S.Ct. at 2485 n.8.]

The Supreme Court concluded in *Chadwick*:

Even though on this record the issuance of a warrant by a judicial officer was reasonably predictable, a line must be drawn. In our view, when no exigency is shown to support the need for an immediate search, the Warrant Clause places the line at the point where the property to be searched comes under the exclusive dominion of police authority. Respondents were therefore entitled to the protection of the Warrant Clause with the evaluation of a neutral magistrate, before their privacy interests in the contents of the footlocker were invaded. [*Id.* at 15–16, 97 S.Ct. at 2485–86 (footnote omitted).]

Here, by mounting a guard at the storage facility, the lessor at best unlawfully repossessed the locker unit.[1] As in *Chadwick*, the lessee retained privacy interests in the contents of his locker when the police took control or dominion over the storage unit. Like the search in *Chadwick*, it was an

---

1. Such unauthorized repossession is ineffective to empower the lessor to consent to a police seizure, absent evidence of abandonment by the lessee. *See Drummond v. United States*, 350 F.2d 983, 989 (8th Cir. 1965), *cert. denied*,

384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542 (1966); *United States v. Wilson*, 472 F.2d 901 (9th Cir.), *cert. denied*, 414 U.S. 868, 94 S.Ct. 176, 38 L.Ed.2d 116 (1973); *Eisentrager v. Hocker*, 450 F.2d 490 (9th Cir. 1971).

"additional and greater intrusion" for the police to seize the contents of the locker. *Id.* at 13, 97 S.Ct. at 2484. Accordingly, I conclude that the warrantless seizure at Independence was unreasonable under the fourth amendment.[2]

Thus, I would also affirm that part of the order of the district court suppressing the contraband removed from the Independence facility.

LAY, Chief Judge, and McMILLIAN, Circuit Judge, join in this concurring and dissenting opinion.

---

**2.** The majority acknowledges that the plain view exception does not apply here. *Ante* at 686. Furthermore, it is clear that requiring a warrant on these facts would not impose an undue burden upon the police. *Cf. United States v. Bomengo*, 580 F.2d 173 (5th Cir. 1978), *cert. denied*, 439 U.S. 1117, 99 S.Ct. 1022, 59 L.Ed.2d 175 (1979) (after viewing illegal gun silencers uncovered by a prior private search, the police obtained a warrant before seizing the items).