UNITED STATES of America, Plaintiff,

v.

Carl Allen KLOPFENSTINE, Defendant.

No. 87–00147–01–CR–W–5.

United States District Court, W.D. Missouri, W.D.

Oct. 23, 1987.

Ellen Suni, Kansas City, Mo., for plaintiff.

Raymond Conrad, Federal Public Defender, Kansas City, Mo., for defendant.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

On September 21, 1987, defendant Carl Allen Klopfenstine filed a motion to suppress tangible evidence either seized from the third floor apartment at 1601 West Walnut, Independence, Missouri, on April 16, 1987, or derivatively acquired from such search. The defendant also seeks to prohibit introduction of any statements made by him to investigating authorities and all testimony relating to the seized items. In support of the motion, defendant Klopfenstine asserts that the searches which resulted in the government's acquisition of this evidence violated the Fourth Amendment to the United States Constitution.

On October 2, 1987, the parties stipulated to certain uncontroverted facts. An evidentiary hearing on disputed facts was held before this Court on October 16, 1987. For the reasons set forth below, the defendant's motion to suppress will be sustained.

## I. FINDINGS OF FACT

In the summer of 1986, defendant Carl Klopfenstine resided with his brother, Harold Klopfenstine, in the second floor south apartment at 1601 West Walnut, Independence, Missouri. On June 8, 1986, Harold Klopfenstine had entered into a month-to-month lease agreement with the owner of the apartment building, William C. Kendall, which provided for a monthly rental of $195.00, payable on the 1st day of each month. Paragraph 12 of the lease agreements provided, inter alia, that if the lessee

defaults in the payment of rent or another lease agreement, then the lessor was entitled to possession without demand and the lessee was required to "quit and surrender" the premises *"upon written demand by lessor."*

The lease did not expressly limit the number of individuals to reside in the second floor apartment. However, the owner paid for all utilities. Hence, when Mr. Kendall discovered that the defendant (and a friend) were living with Harold Klopfenstine, an agreement was reached whereby the defendant and his friend would rent the third-floor apartment for $75.00 per month, but continue to use the brother's bathroom and kitchen facilities on the 2nd floor. The 3rd floor apartment was previously not rented because it did not have running water, kitchen, or bathroom facilities. The defendant executed a month-to-month lease agreement with William Kendall on September 2, 1986, which contained provisions identical to those in Harold Klopfenstine's lease, including paragraph 12 on default. However, the defendant's lease also stated that no more than two people were to occupy the premises without the landlord's prior written consent.

Harold Klopfenstine apparently left town and ceased making rent payments sometime prior to April 1, 1987. Mr. Kendall testified that at this time (also prior to April 1, 1987), he instructed the defendant that he must vacate the third floor and move to the second floor south apartment. The defendant, however, states that sometime around April 5, 1987, Mr. Kendall approached him and *asked* him *if* he would take over payments and move to the second floor. Carl Klopfenstine states that there was no demand for this arrangement, and no specific date was set for the move.

Arrangements were made for rent to be paid at weekly intervals on the second floor apartment. $50.00 payments were made at some time before and on April 14, 1987. A $35.00 payment was made later that month. No new lease agreement was signed. The Court finds that Mr. Kendall did not make a written demand for the defendant to vacate the 3rd floor, nor had he orally set any specific date by which Carl Klopfenstine should surrender the third floor area. In fact, it is clear that although some belongings were removed from the 3rd floor apartment, many items remained. Carl Klopfenstine retained his key to the third floor and continued to utilize this area in addition to the second floor, without objection by the landlord. The landlord also kept some supplies in this area under the eaves.

On April 15, 1987, William Kendall entered the third floor area and observed sheets of paper bearing the impressions of the backs of $20 bills, along with some of Mr. Klopfenstine's personal belongings and furniture. The following day, Mr. Kendall reported finding the impressions to Major Hunsinger of the Independence Police Department, whom he knew. Major Hunsinger asked Mr. Kendall to obtain samples of the sheets from his rental property. Kendall returned to the third floor the same day, April 16, 1987, and retrieved two sheets of paper bearing inked impressions of the backs of a $20 bill, which he promptly turned over to Captain Vaughn of the Independence Police Department.

The Secret Service was then notified of receipt of these sheets. Whereupon, Secret Service agents Douglas Buchholz and Joseph Sheehy went to the Independence Police Department and obtained the sheets of impressions and the police report. They then proceeded to 1601 West Walnut. Agents Larry Stewart and Allen Dillavore also went to this address.

On the second floor of the building, the agents encountered Carl Klopfenstine who had just exited from an open apartment on that floor. The agents identified themselves to defendant and told him they wanted to get up to the third floor. The agents asked the defendant to talk with them outside. It is clear that the defendant went to the car with agents Buchholz and Sheehy, and was told that he was not under arrest and was read his *Miranda* rights, with the defendant signing a waiver. It is also clear that, upon questioning, the defendant admitted that he had been printing the impressions of the Federal Reserve Notes,

and described the activity as an art project, which he said he considered to be legal. However, there are conflicting statements as to whether the agents showed the defendant a sheet with the $20 bill impression *before or after* Mr. Klopfenstine was read his rights and questioned about the impressions. Nevertheless, the Court concludes from the hearing testimony that the defendant consented in writing to the *search* of the 3rd floor apartment only *after* being shown the sheets of money impressions which the landlord had seized earlier that day, and *after* being advised that the agents could get a search warrant if he did not consent.

Agent Buchholz testified that he obtained consent to search from Mr. Klopfenstine because he determined, after arriving at the scene, that the third floor apartment was *not* vacant, but that the defendant had control and access to that area. This belief of Agent Buchholz is evident even though Agent Stewart testified that the defendant's roommate had told him that the third floor was vacant.

After the consent was signed, the defendant and the agents went up to the third floor. Although the defendant states that he used a key to open the door to the third floor, the agents do not recall this. The Court finds it unnecessary to resolve this factual dispute.

## II. CONCLUSIONS OF LAW

### A. *Defendant's Legitimate Expectation of Privacy*

■ The threshold issue is whether defendant Carl Klopfenstine possessed a legitimate expectation of privacy in the third floor apartment at 1601 West Walnut. Fourth Amendment rights are personal and may not be asserted vicariously. *Rakas v. Illinois,* 439 U.S. 128, 148–49, 99 S.Ct. 421, 432–33, 58 L.Ed.2d 387 (1978). Factors to consider in determining whether one possesses a legitimate expectation of privacy include whether the defendant had a possessory interest in the things seized or place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that

it would remain free from governmental intrusion, whether he took normal precautions to maintain his privacy, and whether he was legitimately on the premises. *United States v. Haydel,* 649 F.2d 1152, 1155 (5th Cir.1981).

In *Haydel,* the court concluded that the defendant possessed a legitimate expectation of privacy in his parents' home. The Eighth Circuit has cited with approval the factors applied in *Haydel,* although distinguishing the facts to find that a casual guest did not have a legitimate privacy interest at a host's home in *United States v. Nabors,* 761 F.2d 465, 469 (8th Cir.1985).

■ Here, however, the defendant was not merely a casual guest at the third floor apartment. As noted earlier, the landlord, Mr. Kendall, had not made a written demand that the third floor be vacated, nor had he orally given a deadline for defendant to clear that area. The defendant knew that the area would not be rented to someone else because there were no bathroom or kitchen facilities on the 3rd floor. The defendant retained a key, retained unencumbered access and kept many personal items in the area. The third floor was not directly accessible to the outside. Thus, the fact that the door was not locked is not dispositive. The defendant had the *ability* to exclude others. The Court concludes that Carl Klopfenstine possessed a legitimate expectation of privacy in the 3rd floor apartment.

### B. *Governmental Participation in the Landlord's Search*

The Fourth Amendment proscribes only governmental action and is "wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the government or with the participation or knowledge of any governmental official.'" *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984), *quoting Walter v. United States,* 447 U.S. 649, 662, 100 S.Ct. 2395, 2404, 65 L.Ed.2d 410 (1980). Thus, the government has argued that the seizure of the impres-

sions by the landlord, Mr. Kendall, was merely a private action. However, the facts here clearly indicate otherwise.

■ If a search is conducted by a private individual, or at the urging or initiation of the government, it is not a private search. *United States v. Haes*, 551 F.2d 767 (8th Cir.1977). Although Mr. Kendall's initial entry on April 15, 1987 was for private purposes, he again entered and seized the impressions at the direction of Major Hunsinger of the Independence Police Department, for the purpose of obtaining evidence for the police. The Fourth Amendment has been violated because there was warrantless *official* involvement in the seizure of the items, effectively done by the police, even though the initial discovery was private. *United States v. Roberts*, 644 F.2d 683, 688 (8th Cir.1980). The search and seizure was not incident to a lawful arrest; nor were there exigent circumstances to justify a warrantless seizure. Moreover, the plain view exception is not applicable here. As noted in *Roberts*, 644 F.2d at 686, *citing Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed. 2d 828 (1961), the Supreme Court has rejected the view that police officers may gain entry to a building at a landlord's invitation and then seize anything within plain view. "[T]o uphold such an entry, search and seizure 'without a warrant would reduce the [Fourth] Amendment to a nullity and leave [tenants'] homes secure only in the discretion of [landlords].'" *Chapman*, 365 U.S. at 616–17, 81 S.Ct. at 780. Although it was the landlord who physically performed the search here, he acted as a government agent. Thus, the *Chapman* reasoning is persuasive.

The government's reliance on *Jacobsen* is misplaced. Although the private initial discovery by Mr. Kendall may have provided probable cause for the police to seek a warrant, Major Hunsinger declined to do so. The government-directed seizure by the landlord exceeded the scope of initial discovery and was an unreasonable warrantless invasion, forbidden by the Fourth Amendment. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564 (1971).

**C.** *The "Consent" Search*

■ Having determined that the initial seizure of the silkscreen impressions of $20 bills was unconstitutional, the Court now examines the legality of the search and seizure conducted later by Secret Service agents. The government contends that defendant Klopfenstine voluntarily consented to this search, thus obviating the warrant requirement. Although the Court looks to the totality of circumstances to determine whether consent is valid, *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the burden to establish that consent is voluntarily and freely given remains with the government. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983).

Mr. Klopfenstine did not consent to the search until after he was presented with impression sheets which were illegally obtained by the Independence Police, acting through Mr. Kendall. Further, the federal agents received information to investigate the matter only through Captain John Vaughn of the Independence Police, *after* that department had examined the fruits of the illegal seizure.

■ Under the "fruit of the poisonous tree" doctrine, evidence obtained directly or indirectly through the exploitation of police illegality is inadmissible. *See Wong Sun v. United States*, 371 U.S. 471, 484–88, 83 S.Ct. 407, 415–17, 9 L.Ed.2d 441 (1963); *Hamilton v. Nix*, 809 F.2d 463, 465 (8th Cir.1987). Even if a consent to search is voluntary, evidence found as a result of such search still must be suppressed if the earlier unconstitutional conduct is not sufficiently attenuated to be purged of the primary taint. *United States v. Taheri*, 648 F.2d 598, 601 (9th Cir.1981). Here, the defendant's consent to search is clearly not attenuated from the agent's exploitation of the illegal evidence.

■ Moreover, verbal evidence derived from an unlawful search is also the inadmissible "fruit" of official illegality. *Wong Sun*, 371 U.S. at 485, 83 S.Ct. at 416;

*United States v. Ceccolini,* 435 U.S. 268, 275, 98 S.Ct. 1054, 1059, 55 L.Ed.2d 268 (1978). The Court finds that the defendant did not discuss his "silkscreening" activities with agents Buchholz and Sheehy until they took him to their car and advised him of a counterfeit investigation. Even though the agents told him he was not under arrest when they reached the car and advised him of his rights, the entire incentive for the investigation derived solely from the earlier Fourth Amendment violation.

D. *Application of the Exclusionary Rule*

▋ Evidence seized by state authorities may be admissible in a federal prosecution only if the search complies with the requirements of the Fourth Amendment. *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); *United States v. Shegog,* 787 F.2d 420, 422 (8th Cir.1986). Nevertheless, the government contends that suppression is inappropriate for this "technical violation." The Court disagrees.

The Supreme Court has limited the application of the exclusionary rule to those situations where it will "deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). It is true that exclusion of evidence may not deter police who reasonably rely on a facially valid warrant and a magistrate's determination of probable cause, *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), or on a statute authorizing a warrantless administrative search, *Illinois v. Krull,* —— U.S. ——, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987). In the facts of this case, however, the exclusionary rule's deterrent effect will be achieved, and does not outweigh the societal costs of exclusion.

Instead of obtaining a warrant, Major Hunsinger told Mr. Kendall to bring him samples of the suspicious silkscreen impressions. Agents Buchholz and Sheehy knew that the impressions were seized by the landlord. Even if they thought that the third floor apartment was vacant when they initially went to the building at 1601 West Walnut, Agent Buchholz testified that he did *not* believe that the third floor apartment was vacant after he approached the defendant on the second floor. Rather, Agent Buchholz stated that he then believed that Mr. Klopfenstine had control and access to that area. Hence, the officers may be properly charged with the knowledge that the landlord's seizure was unconstitutional. All evidence derived from that seizure, either directly or indirectly, must be suppressed. Accordingly, it is hereby

ORDERED that defendant Carl Allen Klopfenstine's motion to suppress is sustained.